This appeal requires this court to consider for the first time the tort of outrage as recognized by our supreme court inAmerican Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1981).
This appeal arose from an action instituted by U.S.A. Oil, Inc. (appellant) against Gaines Smith and Anne Smith (appellee). U.S.A. Oil's action against Gaines Smith was based upon his alleged failure to pay for products delivered to him by U.S.A. Oil. The action against Anne Smith was for fraud based upon her alleged failure to properly bill her husband's account while she was employed by U.S.A. Oil as a bookkeeper. The Smiths denied these allegations and filed several counterclaims *Page 1099 
against U.S.A. Oil. Among the counterclaims was an allegation that U.S.A. Oil, due to its extreme and outrageous conduct, intentionally or recklessly caused the Smiths to experience severe emotional distress.
A jury trial on the issues raised by the parties was held on July 8, 1981. At the close of the evidence the appellant made a motion for a directed verdict on the outrage counterclaim. The trial court denied the motion and allowed the issue to go to the jury. After considering the evidence the jury determined that Gaines Smith was liable to U.S.A. Oil for the products received by him and that U.S.A. Oil was liable to Anne Smith for punitive damages in the amount of $10,000 on her outrage counterclaim.[1]
On August 3, 1981 U.S.A. Oil made a motion for a judgment notwithstanding the verdict and in the alternative for a new trial. The learned trial judge denied this motion. This appeal followed.
The issue that this court must determine is whether the facts and circumstances of this case are sufficient to subject U.S.A. Oil to liability for the tort of outrage. We hold, as a matter of law, they are not.
The record reveals the following: Appellee Anne Smith had been employed by appellant U.S.A. Oil as a bookkeeper since 1973 or 1974. Her duties as a bookkeeper required her, among other things, to make entries or supervise the making of entries on the accounts receivable ledgers. Among the accounts receivable ledgers that appellee was responsible for was that of her husband who purchased gasoline from U.S.A. Oil.
On June 29, 1977 appellee received a call from a dispatcher for U.S.A. Oil concerning her employment. As a result of this call, appellee called Joe Saxon, who was president and chairman of the board of U.S.A. Oil. According to appellee, Saxon told her that she was not fired but that she should take a leave of absence. Furthermore, Saxon informed her that he would continue to pay her for a month and after that she would receive a $500 retainer. After this conversation appellee received three more checks. The $500 retainer never materialized. Also, in spite of Saxon's statement that she was not fired, this conversation in fact served as her termination.
After appellee was terminated certain ostensible irregularities were discovered. U.S.A. Oil sent appellee a letter dated September 1, 1977 outlining the claimed irregularities. Among them was the discovery that charges for two gasoline deliveries that had apparently been made to appellee's husband were never entered on the husband's accounts receivable ledger sheet at U.S.A. Oil. Additionally, the company discovered certain discrepancies in the oil invoices wherein some of them had been marked paid yet no cash in the amount of the payment was deposited in the company account. Also a telephone refund check had not been properly deposited in the company account. It was also discovered that certain materials that had been used to remodel appellee's home had been charged to U.S.A. Oil. The company also claimed that appellee had in her possession a calculator which belonged to the company. In closing, Mr. J.W. Traylor, administrative vice president and author of the letter, stated that consideration was being given to presenting the matter to the grand jury.
Notwithstanding the threatened criminal action, no action was taken against appellee on any of the accusations contained in the letter except appellee's alleged failure to properly bill her husband's account which was the basis of the fraud claim. At trial, however, appellee responded to all the charges contained in the letter.
With regard to the calculator, appellee testified that Saxon informed her that she could have the calculator. With regard to the materials used in her home, appellee testified that they had been paid for through payroll deductions from her husband who had previously worked at U.S.A. Oil. Regarding the telephone refund check she testified that she and Saxon had split *Page 1100 
the checks which had amounted to less than $200. With regard to the lack of deposits corresponding to payments appellee testified simply that she deposited all the monies she ever received to the account of U.S.A. Oil. Finally, regarding the failure to bill her husband for two gasoline deliveries she stated that she was not familiar with the two deliveries. Further testimony also indicated that apparently some error had been made in a department other than bookkeeping in documenting the two deliveries.
As stated earlier, the jury, after considering the evidence, awarded appellee $10,000 on her outrage counterclaim. The appellant appeals contending that appellee's evidence did not meet the quantum of proof required to establish a claim for outrage. We agree.
In reaching its decision in Inmon, our supreme court was guided by section 46 of the Restatement (Second) of Torts. Section 46 provides the following:
 (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
It is apparent from a reading of section 46 that there are four separate and distinct elements of the tort of outrage. As stated by the Supreme Judicial Court of Massachusetts in Agisv. Howard Johnson Co., 371 Mass. 140, 355 N.E.2d 315, 318-19
(1976), it must be shown:
. . . (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct . . .; (2) that the conduct was "extreme and outrageous," . . .; (3) that the actions of the defendant were the cause of the plaintiff's distress, . . .; and (4) that the emotional distress sustained by the plaintiff was "severe". . . .
See also Inmon, supra; Peddycoart v. City of Birmingham,392 So.2d 536 (Ala. 1980); Harris v. Jones, 281 Md. 560,380 A.2d 611 (1977); Womack v. Eldridge, 215 Va. 338, 210 S.E.2d 145
(1974). There can be no recovery for the tort of outrage unless all four elements are established.
Appellee, through able counsel, maintains that appellant's conduct of terminating her, not paying her a retainer as promised, sending her a letter threatening her with prosecution for embezzlement and bringing suit against her for fraud was sufficiently extreme and outrageous to support recovery. We need not decide, however, whether the above conduct was so outrageous and extreme as to go beyond all possible bounds of decency (Inmon, supra, at 365) because the proof in this instance was legally deficient in two other respects. Our decision is based upon appellee's failure to establish with legally sufficient evidence that the above conduct caused her emotional distress and appellee's failure to prove with legally sufficient evidence that her emotional distress was severe.
The testimony regarding appellee's emotional distress was quite brief. Appellee testified that after her termination she had to go to the doctor. She also testified that her employment problems affected her sleep. Appellee's husband testified that appellee had problems sleeping after she was terminated. He further testified that the letter from U.S.A. Oil upset her and she cried a lot. Finally, the husband testified that his wife was a very nervous person and had to take tranquilizers.
The foregoing, though indicative of some emotional distress, does not sufficiently establish that appellant's conduct was the cause of the distress. Appellee's husband testified that his wife "is a very nervous person" which strongly indicates that appellee's nervous condition existed prior to the complained of conduct. The appellee herself testified that she went to the doctor but she did not specify why she went nor how many times she went nor the recommended treatment if any. Appellee's husband testified that appellee had to take tranquilizers but there was no testimony as to the strength of the medication nor whether it was prescribed by a doctor nor how long she had been taking the medication *Page 1101 
nor whether she was taking medication prior to the alleged outrageous conduct. Both the appellee and her husband testified that she had experienced some problems sleeping. Again, however, neither the exact nature of these problems nor their duration was specified. Also, as with the medication evidence, evidence regarding appellee's sleep habits prior to the alleged outrageous conduct would have been a useful tool in establishing causation.
In summary, due to the lack of evidence of appellee's emotional and physical state prior to the complained of conduct and the lack of particularities regarding appellee's emotional and physical state after the complained of conduct, this court must hold, as a matter of law, that causation was not established in this case. See Harris v. Jones, supra.
Appellee's proof was also deficient regarding the element of "severe emotional distress."
The tort of outrage was not developed to provide a person with a remedy for the trivial emotional distresses that are common to each person in his everyday life. Such distress is the price of living among people. Restatement (Second) of Torts § 46, Comment j (1965). Thus, in order to prevent the tort of outrage from becoming a panacea for all of life's ills, recovery must be limited to distress that is severe. In describing the type of distress that would support recovery our supreme court stated that "[t]he emotional distress . . . must be so severe that no reasonable person could be expected to endure it." Inmon, supra, at 365. See Harris v. Jones, supra;Agis v. Howard, supra; George v. Jordan Marsh Co.,359 Mass. 244, 268 N.E.2d 915 (1971); Restatement (Second) of Torts § 46, Comment j (1965). After reviewing the evidence in light of the above, we must conclude that, though appellee apparently did suffer some distress, it was not so "severe" as to support recovery for the tort of outrage.
This conclusion is supported by the facts and outcome ofInmon. It should be remembered that in Inmon, though the supreme court recognized a cause of action for outrage, it also held that the facts of the case were not sufficient to bring it within that cause of action. The facts of that case regarding emotional distress are similar to the facts of the present case in that in Inmon the plaintiff established that he had suffered weight loss and insomnia.
Also similar is Harris v. Jones, supra, wherein the emotional distress manifested itself in the aggravation of a pre-existing nervous condition and a worsening of a speech impediment. It was also established that the plaintiff had visited a physician once during the duration of the outrageous conduct and that the physician recommended the same treatment the plaintiff had been receiving for the past six years which was the taking of pills. After chronicling the above evidence of emotional distress the Court of Appeals of Maryland held, as a matter of law, that the humiliation suffered by the plaintiff did not constitute severe emotional distress.
In light of the foregoing we must conclude that the facts of the instant case are not sufficient to establish a cause of action for outrage. Consequently, the trial court erred in not granting appellant's motion for a directed verdict or judgment notwithstanding the verdict.
This case is due to be reversed and remanded for disposition not inconsistent with this opinion.
REVERSED AND REMANDED.
WRIGHT, P.J., and BRADLEY, J., concur.
[1] The trial court granted Anne Smith's motion for a directed verdict on the fraud claim. *Page 1102