The plaintiff, Carolyn Harris, appeals from a summary judgment for the defendant, Lee A. McDavid, on claims of fraud and outrage. We affirm.
Viewed most favorably to plaintiff Harris, the supporting depositions tended to show the following: Harris and McDavid met at a business party in December 1985. Each was married to another person at that time. Harris was employed in the New Orleans branch office of R.P. McDavid Company. McDavid was the vice president of the company at that time. The two began a sexual relationship that evening that lasted until February 1988. In April 1986, Harris left her husband to be with McDavid. Harris alleges that she had an abortion of McDavid's child in August 1986. According to Harris, the couple talked frequently of marriage. In December 1986, Harris moved to Birmingham, where McDavid lived. After moving to *Page 569 
Birmingham, Harris began working for a leasing company called United American. In July 1987, Harris began her own leasing company, Harris Leasing. Harris Leasing was later incorporated as Harris Financial Services. Harris's fraud claim and part of her outrage claim revolve around the formation and operation of this leasing company. In October and November 1987, Harris tried to break up with McDavid because she did not think he was going to divorce his wife. McDavid met with his wife in February 1988 to ask her for a divorce. However, during a lengthy discussion with his wife, he decided to try to save his marriage. Soon thereafter, McDavid ended his affair with Harris and told her any future contact with him would have to be in writing.
 I. Fraud Claim
Harris bases her fraud claim against McDavid on his allegedly false, reckless, or mistaken representations that he would set up Harris Financial Services for her, that he would financially back the business for five years, and that he would advise and direct the business on a daily basis. Harris claims that she left her prior employment in reliance on these representations and that because of this reliance she became liable for a four-year lease for the business, for salaries, and for other business expenses.
The elements of fraud are: (1) a false representation (2) of a material fact (3) which is relied upon by a party (4) who has been damaged as a proximate result. Smith v. First Bank ofChildersburg, 501 So.2d 1228, 1230 (Ala.Civ.App. 1987). Generally, the misrepresentation may be made willfully, with intent to deceive; recklessly, without knowledge; or mistakenly. Lancaster v. Kohn, 515 So.2d 21 (Ala.Civ.App. 1987). However, if the fraud concerns a promise to perform some act in the future, it must be shown that the defendant, at the time the alleged misrepresentation was made, intended not to do the act, and gave the promise with an intent to deceive. Smith,501 So.2d at 1230; Russellville Production Credit Associationv. Frost, 484 So.2d 1084 (Ala. 1986). Harris's fraud claim concerns promises by McDavid to act in the future. Thus, her claim requires proof of an intent to deceive and not to fulfill his promises at the time he made the alleged promises.
There is no evidence that McDavid did not initially intend to fulfill his promises regarding the leasing company or that he intended to deceive Harris with respect to his involvement with the company. To the contrary, the evidence shows that he did fulfill his promises. When the company was formed, he helped Harris compile needed financial information, helped negotiate a lease for the company's office, lent the company $23,000, visited an attorney and an accountant with her, and made the first rental payment for the office, which was not due until a year later. Harris admits that McDavid lent the company $23,000 as starting funds and that he made the first rental payment of $1,893.76. McDavid argues that the only money he agreed to provide was starting expenses. Although Harris alleges in her complaint that he promised to back the business financially for five years, she defeats this claim by admitting in her deposition that he agreed only to provide initial funds. As to her claim that he agreed to advise and direct the business on a daily basis, McDavid claims he was only to be available for consultation and that she was to be responsible for the daily decisions. Again, Harris defeats her own claim by admitting in her deposition that they never agreed on how involved McDavid would be in the business.
Harris claims that McDavid made his promises concerning the business with no intent to fulfill them, but only to get sexual favors from her. Because the undisputed facts show that McDavid did fulfill his promises, this claim is without merit.
Because there was no evidence of intent to deceive at the time McDavid made his promises, the trial court correctly entered summary judgment for McDavid on the fraud claim.
 II. Outrage Claim
The tort of outrage requires that: (1) the actor intended to inflict emotional *Page 570 
distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) that the distress was severe.U.S.A. Oil, Inc. v. Smith, 415 So.2d 1098, 1100 (Ala.Civ.App. 1982), cert. denied, 415 So.2d 1102 (Ala. 1982). With respect to the conduct element, this Court has stated that the conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala. 1981) (citing Restatement (Second) of Torts § 46, comment d. (1948)).
In support of her claim of outrage, Harris alleges that McDavid enticed her to move to Birmingham with promises of marriage; had a sexual affair with her, causing her to become pregnant; convinced her to have an abortion; and then informed her that he intended to end their business and personal relationships. She claims that McDavid committed all these acts so maliciously and intentionally as to be acting outrageously and beyond the scope of acceptable community standards, and that the acts caused her severe emotional and mental distress.
Even assuming all of Harris's factual allegations to be true, McDavid's conduct does not rise to the level of outrageous conduct required by Alabama law. McDavid's conduct cannot be said to be "beyond all possible bounds of decency," nor can it be regarded "as atrocious and utterly intolerable in a civilized society." The tort of outrage is not "a panacea for all of life's ills." U.S.A. Oil, Inc., 415 So.2d at 1101. This Court has held that an employer's invitation to an employee to have an affair does not constitute outrageous conduct. McIsaacv. WZEW-FM Corp. 495 So.2d 649 (Ala. 1986). McDavid's illicit relationship with Harris, though not encouraged by the law, and even though they were initially in an employer-employee relationship, does not constitute outrageous conduct. Further, the evidence does not show that McDavid forced Harris to have an abortion. She was a mature adult and could have decided otherwise. McDavid's ending of the affair and also the business relation, if necessary, was certainly not outrageous conduct. To hold otherwise would be disruptive of the sanctity of marriage. Further, the Court in Inmon recognized that a defendant is not liable for outrage when he is only insisting upon his "legal rights in a permissible way even though he is . . . aware . . . such insistence is certain to cause emotional distress." 394 So.2d at 368 (quoting Restatement (Second) ofTorts § 46, comment g.). Certainly, McDavid had the legal right to attempt to save his marriage even if Harris was distressed thereby.
Thus, we affirm the trial court's summary judgment for McDavid on the outrage claim.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.