The plaintiffs, Roberta J. and John W. Perkins, appeal from a summary judgment for the defendants, Almus Larry Dean and Northwest Alabama Regional Mental Health Center, on claims of outrage, malpractice, and negligent supervision. We affirm.
Viewed most favorably to the plaintiffs, the depositions supporting the summary judgment motion tended to show the following:
In January 1987, John Perkins, experiencing grief over the suicide of his daughter, began counseling sessions with Almus Larry Dean, who, at the time, was a social worker employed by the Northwest Alabama Regional Mental Health Center (hereinafter referred to as "Northwest"). John Perkins was also drinking alcohol excessively and experiencing marital difficulties, afflictions for which he also sought treatment from Dean and Northwest.
John's wife, Roberta Perkins, also began counseling sessions with Dean, for similar problems, shortly after John Perkins began his counseling. Counseling sessions for the Perkinses, both individually and as a family, continued until August 11, 1987. Dean resigned from Northwest effective October 1, 1987. In total, there were 30 counseling sessions between Dean and the Perkinses.
During a counseling session in July 1987, Roberta Perkins told Dean that she wanted to have an affair with him. Dean responded by explaining to her the concept of transference,[1] but also requested that Perkins "check back with me [Dean] later and we'll see how it is between my wife and [me] and you and your husband." (Roberta Perkins's deposition, p. 27.) This was the only mention of an affair during the time that Dean was counseling Roberta Perkins.
Following his resignation from Northwest, Dean continued contact with the Perkinses socially, based on the common interests of Dean, his wife, and the Perkinses in Alcoholics Anonymous and Alanon. The Perkinses visited in the home of Dean and his wife, with some visits culminating in all four persons' spending time together in a hot tub.
In January 1988, Roberta Perkins and Dean began having an affair. That affair ended in September 1988.
 I. Malpractice claim
Assuming, without deciding, that a claim for social worker malpractice would be recognized in this State, the facts of this case do not support such a claim, and if they did, the statute of limitations would bar the claim. See generally,Doe v. Hall, No. 86-HM-5167 (N.D.Ala., Feb. 12, 1987), Doe v. Swift, 570 So.2d 1209 (Ala. 1990), and *Page 1219 Handley v. Richards, 518 So.2d 682 (Ala. 1982).
In the two cases cited by the appellants in support of their malpractice claims, Horak v. Biris, 130 Ill. App.3d 140, 85 Ill.Dec. 599, 474 N.E.2d 13 (1985), and Cotton v. Kambly,101 Mich. App. 537, 300 N.W.2d 627 (1980), the sexual intercourse involved occurred during the course of an ongoing, professional counselor-patient relationship. In this case, the sexual encounter took place after the professional relationship between Roberta Perkins and Dean had ended and after Dean had resigned from Northwest. The Perkinses argue that when the actual intercourse took place is not relevant, for the gravamen of their petition is that Dean and Northwest did not properly treat them and that as a result they were injured. They citeZipkin v. Freeman, 436 S.W.2d 753 (Mo. 1968), in support of this argument. In that case, the acts of the defendant were all committed under the premise of therapy and counseling while the plaintiff was still under the care of the defendant. The sexual relations between Dean and Roberta Perkins were not commenced in the furtherance of any therapy or treatment and did not occur within the shadow of any professional relationship. The sexual encounters occurred in a purely social context.
Accordingly, Northwest is not liable for Dean's actions under the doctrine of respondeat superior. When Dean had sex with Roberta Perkins, he was not employed by or associated with Northwest in such a way that a master/servant relationship existed (Perfection Mattress Spring Co. v. Windham, 236 Ala. 239,182 So. 6 (1939), as cited in Scott v. Great Atlantic Pacific Tea Co., 338 F.2d 661, 662 (5th Cir. 1964) (applying Alabama law)), nor did the intercourse take place within the line or scope of Dean's employment with Northwest. Beasley v.Schuessler, 519 So.2d 551, 553 (Ala.Civ.App. 1987).
 II. Outrage claim
An action based on the tort of outrage requires proof that: (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; and (3) the distress was severe. Harris v. McDavid,553 So.2d 567, 569, citing U.S.A. Oil, Inc. v. Smith,415 So.2d 1098, 1100 (Ala.Civ.App. 1982), cert. denied, 415 So.2d 1102
(Ala. 1982). With respect to the conduct, this Court has stated that the conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." American Road Service Co.v. Inmon, 394 So.2d 361, 365 (1981) (citing Restatement(Second) of Torts, § 46, comment d (1948)). While it may be said that society frowns upon extra-marital relationships, to claim that the conduct and actions in this case rise to the level of outrage would be an attempt to transform the tort of outrage into a "panacea for all of life's ills," U.S.A. Oil,Inc., 415 So.2d at 1101, something that the cause of action was not recognized for. This Court has held that an employer's invitation to an employee to have an affair did not constitute outrageous conduct, McIsaac v. WZEW-FM Corp., 495 So.2d 649
(Ala. 1986), and that a man's enticement of a woman to move from one locale to another with promises of marriage, causing the woman to become pregnant, convincing her to have an abortion, and then informing her of his intent to end their business and personal relationships did not rise to the level of outrageous conduct. Harris v. McDavid, 553 So.2d 567 (Ala. 1989). Consensual sexual relations between adults within the context of an extra-marital affair, absent any professional relationship or duty, and without a malicious intent to inflict harm on another, may well be morally or socially repugnant, but they do not constitute outrageous conduct within the contemplation of the case law recognizing the tort of outrage.
 III. Negligent Supervision Claim
In their negligent supervision claim against Northwest, the Perkinses must show or demonstrate that Northwest had notice or knowledge (actual or presumed) of Dean's alleged incompetency for Northwest *Page 1220 
to be held responsible; demonstrating liability on Northwest's part requires affirmative proof that Dean's alleged incompetence was actually known to Northwest or was discoverable by Northwest if it had exercised care and proper diligence. Lane v. Central Bank of Alabama, N.A.,425 So.2d 1098 (Ala. 1983), quoting Thompson v. Harvard, 285 Ala. 718,235 So.2d 853 (1970). The trial court must determine whether a duty existed, and, if so, the extent of that duty. Rose v.Miller Co., 432 So.2d 1237, 1238 (Ala. 1983). The undisputed facts establish that there was no duty owed by Northwest to the Perkinses.
In their reply brief, the Perkinses finally argue for the first time that it was error for the trial court to enter summary judgment because, they argue, discovery matters essential to them as non-moving parties were pending. This argument is waived, and will not be considered by this Court.Kennesaw Life Accident Insurance Co. v. Old NationalInsurance Co., 291 Ala. 752, 287 So.2d 869 (1973).
We affirm the summary judgment for Dean and Northwest.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.
[1] "Transference" is defined as the projection of feelings, thoughts and wishes onto the analyst, who has come to represent some person from the patient's past. Stedman's MedicalDictionary 1473 (5th ed. 1982).