Barbara Gunter appeals from a summary judgment entered by the Mobile County Circuit Court in favor of R. Michael Huddle, M.D. ("Dr. Huddle"), on her claims of medical malpractice and intentional infliction of emotional distress arising out of an alleged five-year sexual affair between the parties. We affirm.
In reviewing the disposition of a motion for summary judgment, we use the same standard the trial court used in determining "whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co., 531 So.2d 860, 862
(Ala. 1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank ofBaldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). Our review is further subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie,Inc., 564 So.2d 412 (Ala. 1990).
The record reveals the following facts. Ms. Gunter underwent a kidney transplant in 1980. After she moved with her husband to Bay Minette, her physician in Montgomery recommended a physician in Mobile for her follow-up care. Dr. Huddle, a practicing nephrologist board-certified in internal medicine, first saw Ms. Gunter in early 1988. Dr. Huddle's affidavit states that he saw Ms. Gunter in his office on seven occasions, i.e., once each year in 1988, 1989, 1990, 1993, 1994, 1995, and 1996. However, Dr. Huddle's affidavit and Ms. Gunter's medical records indicate that other physicians associated with Dr. Huddle saw Ms. Gunter on several other occasions, and Ms. Gunter's affidavit indicates that her appointments were "three to six months apart."
According to Ms. Gunter's affidavit, Dr. Huddle "made comments" to her within the first year of his treating her that indicated he was sexually interested in her. Her affidavit indicates that on one occasion, Dr. Huddle stated, "If you had an affair with your doctor, I guess you could not see him as your doctor anymore." It is unclear from the affidavit when this statement was made.
According to Ms. Gunter's affidavit, she had an appointment with Dr. Huddle after her husband died in May 1989. During this appointment, Ms. Gunter confided that she was depressed over her husband's death. Dr. Huddle prescribed the antidepressant Prozac for her; he also apparently stated that he "had a big shoulder to cry on" and suggested, in a somewhat crude fashion, that Ms. Gunter needed to engage in sexual intercourse. Ms. Gunter's medical records reflect that she was seen by Dr. Huddle or by one of his associates on September 21, 1989. The notes of that appointment indicate that she was being treated for depression and loss of energy and loss of appetite. Those records indicate that Dr. Huddle did prescribe Prozac for her on November 30, 1989.
In the spring of 1991, according to Ms. Gunter's affidavit, she experienced pain in her back and she telephoned Dr. Huddle's office for advice. She spoke with a nurse, and later received a telephone call from Dr. Huddle, to whom she described her symptoms. Her medical records include an entry on June 11, 1991, wherein her complaint was that her hips were "hurting," and Dr. Huddle prescribed aspirin and a heating pad. However, Ms. Gunter's affidavit indicates that Dr. Huddle came to her house that day, and that she and Dr. Huddle began a sexual affair that lasted until August 1996. During this period, Ms. Gunter continued to visit Dr. Huddle for medical services, although she averred that each of her office visits during that period resulted in some form of sexual contact, usually fellatio. Ms. Gunter stated that Dr. Huddle was aware that she had been *Page 546 
diagnosed with depression; that Dr. Huddle was aware of her depression; that Dr. Huddle's actions caused her depression to worsen; and that Dr. Huddle's preoccupation with sex rendered him incapable of thinking about his duty as a doctor.
Ms. Gunter filed an action against Dr. Huddle, asserting claims of medical malpractice and intentional infliction of emotional distress. Dr. Huddle moved to dismiss the complaint for failure to state a claim; this motion was denied. Dr. Huddle then filed a motion for a summary judgment, contending that Ms. Gunter's claims were time-barred and that they were defective as a matter of law; this motion was supported by Dr. Huddle's affidavit and by Ms. Gunter's medical records. Ms. Gunter filed a response in opposition, relying upon her affidavit. The trial court granted Dr. Huddle's motion and entered a summary judgment in favor of Dr. Huddle.
Ms. Gunter appealed the summary judgment to the Alabama Supreme Court. That court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
Ms. Gunter first asserts that the trial court erred in entering a summary judgment in favor of Dr. Huddle on her medical-malpractice claim. Conceding that this is a "case of first impression," she contends that her affair with Dr. Huddle occurred "within the shadow of [a] professional relationship," and, therefore, that it constituted malpractice.
However, while there appears to be no Alabama case directly on point, the great weight of authority holds that a sexual relationship between a nonpsychiatric physician and a patient is outside the scope of the physician's treatment, and is not actionable as malpractice, unless it is alleged that the sexual relations were instigated under the guise of providing therapy to the patient. "The relevant authorities . . . agree that a physician who induces a patient to enter into sexual relations is liable for professional negligence only if the physician engaged in the sexual conduct on the pretext that it was a necessary part of the treatment for which the patient has sought out the physician."Atienza v. Taub, 194 Cal.App.3d 388, 393, 239 Cal.Rptr. 454,457 (1987) (emphasis added); accord, Odegard v. Finne,500 N.W.2d 140, 143 (Minn.Ct.App. 1993); Mindt v. Winchester,151 Or. App. 340, 345, 948 P.2d 334, 336
(1997), review denied, 327 Or. 431,966 P.2d 222 (1998); compare Dillon v. Callaway, 609 N.E.2d 424
(Ind.Ct.App. 1993) (patient who was induced to engage in sadomasochistic sexual relations with medical doctor, who had entered into counseling relationship with patient after failing to find physical cause for patient's symptoms, could sue doctor for medical malpractice).
The single case to the contrary upon which Ms. Gunter relies,Hoopes v. Hammargren, 102 Nev. 425, 725 P.2d 238 (1986), is based upon premise that the relationship between a physician and a patient is "fiduciary in nature." In Hoopes, the Nevada court concluded that exploitation of the physician-patient relationship could breach the standard of care owed by a professional and constitute malpractice. In contrast, Alabama caselaw holds that a physician-patient relationship is not a fiduciary relationship as a matter of law. See Mitchell v. Harris, 286 Ala. 724, 729,246 So.2d 648, 651-52 (1971). "[T]here is nothing inherent in the typical relationship between a patient and a [nonpsychiatric physician] that makes the patient unusually susceptible to accept the sexual advances of the [physician]." Newland v. Azan,957 S.W.2d 377, 379 (Mo.Ct.App. 1997) (expressly declining to apply Hoopes in a case involving a dentist's alleged sexual advances toward patient). We likewise adhere to the majority rule set forth above and hold that where, as here, a patient of a nonpsychiatric physician does not present evidence that he or she was led to believe by that physician that the sexual relationship was part of the patient's treatment, a sexual relationship between the patient and the physician is outside the scope of the physician's professional services and does not constitute professional malpractice. Therefore, as to Ms. Gunter's medical malpractice claim against Dr. Huddle, the summary judgment *Page 547 
is due to be affirmed.[1]
Ms. Gunter further contends that the trial court erred in entering the summary judgment in favor of Dr. Huddle on her claim for intentional infliction of emotional distress, also known as the tort of outrage. The elements of such a claim are settled:
 "The tort of outrage requires that: (1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff distress; and (4) . . . the distress was severe. With respect to the conduct element, this Court has stated that the conduct must be `so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'"
Harris v. McDavid, 553 So.2d 567, 569-70
(Ala. 1989) (citations omitted). In Harris, the Alabama Supreme Court concluded that a male paramour's enticement of a female plaintiff to move to another city, their sexual affair and his subsequent impregnation of her, his convincing her to undergo an abortion, and his subsequent termination of their business and personal relationships did not amount to outrageous conduct. Similarly, a psychologist's engaging in sexual relations with a former patient was described as outside any professional relationship between the parties and was held not to constitute outrageous conduct that would support an action by the patient's spouse in Perkins v.Dean, 570 So.2d 1217 (Ala. 1990).
Here, Ms. Gunter was referred to Dr. Huddle for follow-up treatment with respect to her kidney transplant. Although Dr. Huddle did consult with Ms. Gunter concerning various other conditions, there is no indication that the sexual relationship between Ms. Gunter and Dr. Huddle was within the scope of their relationship as physician and patient, or even any evidence that Ms. Gunter was obliged in any way to engage in sexual relations with Dr. Huddle as a prerequisite for treatment. Given that the tort of outrage is "a limited remedy to be applied only in flagrantly egregious circumstances" (Turner v. Hayes,719 So.2d 1184, 1187 (Ala.Civ.App. 1997), aff'd in pertinent part,719 So.2d 1190 (Ala. 1998)), we conclude that the alleged conduct of Dr. Huddle that Ms. Gunter has described in her affidavit is not "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."Harris, 553 So.2d at 570.
Based upon the foregoing facts and authorities, the summary judgment in favor of Dr. Huddle on Ms. Gunter's claims of medical malpractice and the intentional infliction of emotional distress is due to be affirmed. However, our affirmance of the trial court's judgment should not be interpreted as condoning the type of alleged conduct described by Ms. Gunter, nor do we express any opinion as to whether that conduct constitutes "unprofessional conduct" within the meaning of statutes or administrative regulations governing the practice of medicine in Alabama. See § 34-24-360(2), Ala. Code 1975; Ala. Admin. Code r. 540-X-9-.08
(effective January 24, 1997).
AFFIRMED.
YATES, CRAWLEY, and THOMPSON, JJ., concur.
MONROE, J., concurs specially.
[1] Because we reach this conclusion, we do not address Dr. Huddle's alternative contention that any claim for medical malpractice arising from the parties' affair. which lasted from 1991 to 1996, is time-barred under § 6-5-482, Ala. Code 1975.But cf. Travis v. Ziter, 681 So.2d 1348, 1355 (Ala. 1996) (holding that alleged sexual abuse victim's tort claims against priest accrued "no later than" the date of the priest's "last actionable contact" with the alleged victim).