PITTMAN, Judge.
Tamarra Martin and Lesester Williams (hereinafter referred to collectively as “the plaintiffs”) appeal from a judgment dismissing their complaint against Hodge’s Chapel, LLC (“the funeral home”),[1] and Whispering Pines Cemetery, LLC (“the cemetery”). We affirm in part, reverse in part, and remand for further proceedings.
On June 25, 2010, the plaintiffs sued the funeral home, the cemetery, and several fictitiously named defendants, alleging claims of negligence, wantonness, the tort of outrage, breach of contract, and fraud, based on the following factual allegations. The plaintiffs had arranged with the funeral home to have four of their deceased family members buried in the cemetery: Emma Lee Prince (Martin’s mother and Williams’s grandmother) (“Ms. Prince”), who had been buried in April 1990; Steven Prince, Sr. (Martin’s father and Williams’s grandfather) (“Prince, Sr.”), who had been buried in March 1996; Stephen Prince, Jr. (Martin’s brother and Williams’s uncle) (“Prince, Jr.”), who had been buried in January 2000; and William Mae Mobley (Martin’s brother and Williams’s father) (“Mobley”), who had been buried in January 2004. The plaintiffs could not afford to place headstones or other markers on the graves at the time of the burials, but the funeral home assured the plaintiffs that it “kept accurate records” of the location of the grave sites so that the graves could be found for visitation and the later placement of headstones. The condition of the cemetery premises deteriorated over time, and the landmarks changed so that it became difficult to locate the grave sites. In May 2009, Martin contacted the funeral home to find the location of her mother’s grave so that she could place a headstone there; Martin also requested the location of her father’s and brothers’ graves. The funeral home provided Martin with the location of her father’s and brothers’ graves by lot and section number, but the funeral home was unable to tell her the location of her mother’s grave. The plaintiffs asserted that they had recently been informed of a pending lawsuit, in which it had been alleged that the same defendants had kept poor records and had misplaced another decedent’s remains, and they “sus-peet[ed] that there [was] a great likelihood” that the location of all four of their family members’ graves was also unknown.
Both defendants were served with the complaint. Although the cemetery failed to answer or otherwise defend, the funeral *760 home filed a motion to dismiss or, in the alternative, a motion for a summary judgment, first stating that it had been incorrectly named in the complaint as “Hodges Funeral Chapel, LLC,” when its correct name was “Hodge’s Chapel, LLC.” Citing Ex parte Liberty National Life Insurance Co., 825 So.2d 758, 768-66 (Ala.2002), the funeral home asserted that, because the plaintiffs’ claims, it said, arose from the interment of Ms. Prince, who had been buried in April 1990, but were not brought until June 2010, the plaintiffs’ claims were barred by the 20-year rule of repose. Second, the funeral home asserted that the plaintiffs’ complaint was due to be dismissed based on the two-year limitations period set forth in § 6-2-38, Ala.Code 1975, and the six-year limitations period set forth in § 6-2-34, Ala.Code 1975. Third, the funeral home alleged that the complaint failed to state a claim against it because Hodge’s Chapel, LLC, had not been in existence in 1990, but had been formed only in 1997. The funeral home attached its Articles of Organization, dated December 17,1997, to the motion.
The plaintiffs filed a response in opposition to the funeral home’s motion, asserting that the funeral home had addressed the claims relating to only one of their family members (Ms. Prince), and arguing that the rule of repose was inapplicable to those claims. In addition, the plaintiffs argued that all of their claims had accrued in May 2009, when Martin had inquired as to the location of her family members’ grave sites, the funeral home had failed to provide her with the location of Ms. Prince’s grave site, the funeral home had given her incorrect information regarding the location of the other three grave sites, and the plaintiffs had suffered emotional distress. The plaintiffs maintained that because they had filed suit 13 months after the date that their claims had accrued, in their view, neither their tort nor their contract claims were barred by any statutes of limitation. The plaintiffs did not respond to the funeral home’s assertion that it was not liable on any of the plaintiffs’ claims because the funeral home did not exist before 1997.
The trial court entered a judgment stating: “Motion to dismiss is hereby granted. Case dismissed with prejudice.” The plaintiffs filed a postjudgment motion, arguing that no statute of limitations barred their tort or contract claims because, the plaintiffs asserted, those claims had accrued in May 2009 and they had filed their complaint in 2010; that the allegation that Hodge’s Chapel, LLC, was not in existence until 1997 was not a valid legal basis to dismiss the claims against that entity; and that the claims against the cemetery were dismissed erroneously because the cemetery “ha[d] filed no motion whatsoever.” The postjudgment motion was denied by operation of law, after which the plaintiffs timely appealed. The supreme court subsequently transferred the appeal to this court pursuant to Ala.Code 1975, § 12-2-7(6).

Standard of Review

Because the funeral home presented, in support of its dispositive motion, matters outside the pleadings that were not excluded by the trial court, we review the trial court’s judgment under the principles of law pertaining to summary judgments.
“ ‘[Wjhere matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment as provided in Rule 12(c), [Ala. R. Civ. P.], regardless of its denomination and treatment by the trial court.’ Boles v. Blackstock, 484 So.2d 1077, 1079 (Ala.1986).
“‘When the trial court is called upon to consider a Rule 12(b)(6) mo *761 tion, it must examine the allegations in the complaint, ... and construe it so as to “resolve all doubts concerning [its] sufficiency in favor of the [claimant].” In so doing, the court does not consider whether the claimant will ultimately prevail, only whether he has stated a claim under which he may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985), citing First National Bank v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258 (Ala.1981), and Karagan v. City of Mobile, 420 So.2d 57 (Ala.1982).’
‘“If the motion, however, is converted to a Rule 56[ (c), Ala. R. Civ. P.,] motion for summary judgment, the ‘moving party’s burden changes and he is obliged to demonstrate that there exists no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law.’ Papastefan v. B & L Const[r], Co., 356 So.2d 158 (Ala.1978), citing C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1366 (1969).’ ”
A.W. v. Wood, 57 So.3d 751, 756 (Ala.2010) (quoting Hightower & Co. v. United States Fid. & Guar. Co., 527 So.2d 698, 702-03 (Ala.1988)).

The Claims Concerning the Burial Site of Ms. Prince

A. The Rule of Repose
Citing Willis v. Shadow Lawn Memorial Park, 709 So.2d 1241 (Ala.Civ.App.1998), the plaintiffs contend that the rule of repose does not bar their claims with respect to Ms. Prince’s grave site. In Willis, a woman sued the owners of the cemetery in which her grandmother had been buried in 1931, alleging that the owners had failed to maintain the grave site, had sold the grave site to another party, and had interred another body there. The complaint, filed in 1996, stated claims of fraud, conversion, breach of contract, negligence, wantonness, and intentional or reckless infliction of emotional distress. The owners moved for a judgment on the pleadings, contending that “the incidents giving rise to [the granddaughter’s] claims had occurred more than 20 years before the filing of the complaint, and that her claims were therefore barred by the common-law rule of repose.” 709 So.2d at 1242. The trial court granted that motion.
On appeal, this court reversed. We decided that because the complaint did not include the time when the defendants had allegedly breached the burial contract or had allegedly engaged in the tortious conduct specified, it was impossible to tell when the actions that gave rise to the granddaughter’s claims had occurred and, thus, when the rule of repose had begun to run as to those claims. In Willis, this court held that “there remained] a factual dispute, unresolved by the pleadings themselves, concerning whether [the granddaughter’s] claims accrued more than 20 years before she filed her complaint.” 709 So.2d at 1243. Accord Evans v. Walter Indus., Inc., 579 F.Supp.2d 1349, 1375 (N.D.Ala.2008) (denying without prejudice the defendants’ motions to dismiss on the basis of Alabama’s common-law rule of repose and recognizing that “some of [the] claims may be barred under ... [that] doctrine[ ], but the court cannot determine which ones without evidence unavailable at this stage of the proceedings”).
In Ex parte Liberty National Life Insurance Co., supra, the supreme court reviewed the history and application of the rule of repose in Alabama. The court stated that the rule of repose is similar to but “ ‘broader in scope than a statute of limitations.’ ” 825 So.2d at 764 (quoting Rector v. Better Houses, Inc., 820 So.2d 75, 77 n. 2 (Ala.2001)). The court emphasized the fact that the rule of repose *762 is “not based upon concepts of accrual, notice, or discovery — concepts that are applicable to statutes of limitation.” Id. The court explained that
“the 20-year period [of the rule of repose] begins to run against claims the first time those claims could have been asserted,[2] regardless of the claimant’s notice of a claim. See Moore [v. Liberty Nat’l Ins. Co.], 108 F.Supp.2d [1266,] 1275 [(N.D.Ala.2000)] (‘Application of the rule of repose has only one element — the passage of twenty years time from the moment that the actions giving rise to the claim occurred — and, if that time has elapsed, no claim can be pursued.’).
825 So.2d at 764-65 (footnote omitted).[2] In Ameñcan General Life & Accident Insurance Co. v. Underwood, 886 So.2d 807 (Ala.2004), the supreme court expanded on its earlier discussion in Liberty National as to what triggers the running of the 20-year period. In Underwood, the court stated that “[t]he rule of repose begins running on a claim as soon as all of the essential elements of that claim coexist so that the plaintiff could validly file suit.” 886 So.2d at 812 (emphasis added). The 20-year period will, therefore, begin to run at different times for different types of claims. For example, because damages are an essential element of a tort claim, the rule of repose does not begin to run as to a tort claim until “the defendant’s tor-tious act proximately causes the plaintiff to suffer an actual injury.” 886 So.2d at 812-13. “A suit on a breach-of-contract claim, on the other hand, may be commenced as soon as the defendant breaches the contract, regardless of whether the plaintiff has suffered an actual injury.” 886 So.2d at 813 n. 1 (citing Stephens v. Creel, 429 So.2d 278 (Ala.1983)). That is so because
“even if the plaintiff could not show any actual damage, [Alabama appellate courts] have repeatedly allowed a recovery of at least nominal damages where the plaintiff has shown that defendant has breached the terms of the contract.”
Stephens, 429 So.2d at 280.
Based on the foregoing principles, we must determine when all the essential elements of the plaintiffs’ tort and contract claims concerning the burial site of Ms. Prince coexisted for the first time and, thus, when the 20-year period of the rale of repose began to run as to those claims.
1. The Negligence and Wantonness Claims
“To establish negligence, the plaintiff must prove: (1) a duty to a *763 foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. Albert v. Hsu, 602 So.2d 895, 897 (Ala.1992). To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains. Smith v. Davis, 599 So.2d 586 (Ala.1992).”
Martin v. Arnold, 643 So.2d 564, 567 (Ala.1994). The complaint alleged that the funeral home, the cemetery, and fictitiously named defendants owed them the duty of keeping accurate records of the location of all grave sites; that the defendants had negligently or wantonly breached that duty; and that the plaintiffs had suffered emotional distress as a consequence of learning in May 2009 that the funeral home had been unable to provide Martin with the location of Ms. Prince’s grave site.
In its dispositive motion, the funeral home asserted that the plaintiffs’ claims were barred by the rule of repose, but the funeral home did not demonstrate that the 20-year period of the rule of repose had begun to run, as a matter of law, more than 20 years before the plaintiffs filed their complaint in 2010.
2. The Outrage Claim
“The four elements of the tort of intentional infliction of emotional distress, which is also known as the tort of outrage, are: ‘ “(1) the actor intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant’s actions caused the plaintiff distress; and (4) ... the distress was severe.” ’ Gunter v. Huddle, 724 So.2d 544, 547 (Ala.Civ.App.1998) (quoting Harris v. McDavid, 553 So.2d 567, 569-70 (Ala.1989)). Because a cause of action does not accrue until a plaintiff is entitled to maintain the action, a cause of .action alleging the intentional infliction of emotional distress does not accrue until the defendant’s actions have caused the plaintiff severe distress, two of the four necessary elements for such a cause of action.” .
Chaney v. Ala West-AL, LLC, 22 So.3d 488, 498 (Ala.Civ.App.2008). Because all the essential elements of the plaintiffs’ tort-of-outrage claim concerning the burial site of Ms. Prince did not coexist until May 2009 when the plaintiffs suffered emotional distress, the funeral home failed to demonstrate that the 20-year period of the rule of repose had begun to run, as a matter of law, more than 20 years before the plaintiffs filed their complaint in 2010.
3. The Fraud Claims
“The elements of a fraudulent-misrepresentation claim are: ‘(1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation.’ Padgett v. Hughes, 535 So.2d [140,] 142 [(Ala.1988)]. ‘The elements of a claim of fraudulent suppression are: “ ‘(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury.’ ” ’ DGB, LLC v. Hinds, 55 So.3d 218, 231 (Ala.2010) (quoting Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C., 932 So.2d 883, 891 (Ala.2005), quoting in turn Lambert v. Mail Handlers Benefit Plan, 682 So.2d 61, 63 (Ala.1996)).”
Sexton v. Bass Comfort Control, Inc., 63 So.3d 656, 662 (Ala.Civ.App.2010). The *764 complaint alleged that the funeral home, the cemetery, and fictitiously named defendants had misrepresented the fact that they kept accurate records of the location of all grave sites and had suppressed the true facts concerning their inadequate record keeping as to the location of the grave sites. The plaintiffs further alleged that they had been induced to their detriment, by the misrepresentation as to the defendants’ accurate record keeping and the suppression of the true facts regarding the defendants’ inadequate record keeping, to believe that they could visit their family members’ grave sites and that they could, when they were financially able to do so, place headstones on the grave sites.
Because all the essential elements of the plaintiffs’ fraudulent-misrepresentation and fraudulent-suppression claims concerning the burial site of Ms. Prince did not coexist until May 2009, when the plaintiffs suffered emotional distress as a consequence of learning that the funeral home had no record of the whereabouts of Ms. Prince’s grave site, the funeral home did not demonstrate that the 20-year period of the rule of repose had begun to run, as a matter of law, more than 20 years before the plaintiffs filed their complaint in 2010.
4. The Breach-of-Contract Claim
Unlike the plaintiffs’ tort claims (whose essential elements did not coexist until the plaintiffs suffered damages in May 2009), all the essential elements of the plaintiffs’ breach-of-contract claim coexisted at the time of the breach — that is, when the funeral home, the cemetery, or the fictitiously named defendants failed to maintain accurate records concerning the burial site of Ms. Prince — “regardless of whether the plaintiff[s] ha[d] suffered an actual injury” at that time. American Gen. Life & Acc. Ins. Co. v. Underwood, 886 So.2d at 813 n. 1.
The complaint did not allege the time of the breach, and, in its dispositive motion, the funeral home made no showing that, if a breach had occurred, it had occurred between April 1990 and June 24, 1990 (more than 20 years before the plaintiffs filed their complaint on June 25, 2010). Thus, this case is like Willis, because it is impossible to tell when the actions giving rise to the plaintiffs’ contract claim as to Ms. Prince’s grave site occurred and, therefore, when the rule of repose began to run as to that claim. As in Willis,
“[w]hile the complaint allege[d] that the defendants ha[d] breached the burial contract, there is no indication that this breach necessarily took place more than 20 years before the filing of [the plaintiffs’] complaint so as to implicate the rule of repose....
“... [W]e conclude that there remains a factual dispute ... concerning whether [the plaintiffs’] claims accrued more than 20 years before [they] filed [their] complaint.”
709 So.2d at 1243. Accordingly, the funeral home did not satisfy its burden of demonstrating that the period of the rule of repose had begun to run, as a matter of law, more than 20 years before the plaintiffs filed their complaint.
Insofar as the trial court may have determined that the plaintiffs’ claims concerning the burial site of Ms. Prince were barred by the rule of repose, that determination was erroneous. Nevertheless, as discussed infra, the judgment in favor of the funeral home (but not the cemetery) as to the claims concerning the burial site of Ms. Prince is due to be affirmed for another reason.
*765 B. Fictitious-Party Allegations
The funeral home contended that, because it was not in existence when Ms. Prince was buried in 1990, it could not have contracted with the plaintiffs, owed them any duty, or breached any duty regarding Ms. Prince’s burial site. In response, the plaintiffs argued that, in their complaint, they had alleged claims against fictitiously named defendants who, the plaintiffs asserted, were responsible for the interment of their family members and the record keeping regarding'their family members’ burial sites. Accordingly, they insist, their fictitious-party allegations were “broad enough to encompass claims they might have against any other entity, including an entity purchased by” the funeral home.
Assuming, without deciding, that a motion to substitute the funeral home for a fictitiously named defendant would have been proper, we note that no such motion was made in this case. Moreover, in response to the funeral home’s dispositive motion, the plaintiffs filed neither a request for a continuance nor an affidavit, pursuant to Rule 56(f), Ala. R. Civ. P., stating that, without discovery, they could not ascertain the true identity of the fictitiously named defendants, could not determine whether the funeral home had successor liability to them, and could not amend their complaint to substitute actual defendants for the fictitiously named defendants. Rule 56(f) provides:
“Should it appear from the affidavits of a party opposing the [summary-judgment] motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party’s opposition, the court may deny the motion for summary judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.”
“Rule 56(f) requires from the party opposing the summary judgment motion an affidavit stating the reasons why he cannot present essential facts.” Herring v. Parkman, 631 So.2d 996, 1002 (Ala.1994).
Here, the plaintiffs presented the trial court with no basis upon which to delay its ruling on the funeral home’s motion. Although the plaintiffs argued in their post-judgment motion that they “should have the opportunity to prove their case,” and although they cited Prattville Memorial Chapel v. Parker, 10 So.3d 546 (Ala.2008), for the proposition that a corporate cemetery , owner may be the successor to a previous owner, “[w]e cannot hold the trial court in error for failing to grant a continuance under Rule 56(f) when none was requested.” Thompson v. Huntley, 977 So.2d 493, 496 (Ala.Civ.App.2007).
We, therefore, affirm the judgment in favor of the funeral home insofar as it relates to the plaintiffs’ claims concerning the grave site of Ms. Prince. However, we reverse that judgment as to the claims asserted against the cemetery, which, for all that appears in the record, was in existence at all pertinent times.

The Claims Concerning the Burial Site of Prince, Sr.

We also affirm the judgment in favor of the funeral home (but not the cemetery) insofar as it relates to the plaintiffs’ claims concerning the grave site of Prince, Sr., who was buried in 1996. In response to the funeral home’s assertion that it was not liable to the plaintiffs on any of their claims because it did not exist until 1997 and, therefore, could not have contracted with or breached any duty to the plaintiffs, the plaintiffs filed neither a request for a continuance nor an affidavit, pursuant to Rule 56(f), stating that, without discovery, they could not ascertain the true identity *766 of the fictitiously named defendants, could not determine whether the funeral home had successor liability to them, and could not amend their complaint to substitute actual defendants for the fictitiously named defendants.

The Claims Concerning the Burial Sites of Prince, Jr., and Mobley

In its dispositive motion, the funeral home did not controvert any of the plaintiffs’ factual allegations. Instead, the funeral home argued (a) that it was not in existence until 1997 and that it, therefore, could not have contracted with the plaintiffs or breached any duty to them before that date and (b) that the plaintiffs’ claims were barred by the applicable statutes of limitations.
Prince, Jr., was buried in January 2000, and Mobley was buried in January 2004. The funeral home was admittedly in existence on both occasions, a fact that would have defeated any successor-liability defense that the funeral home might have asserted. Therefore, with respect to the plaintiffs’ claims concerning the burial sites of Prince, Jr., and Mobley, the funeral home had the burden of demonstrating that there was no genuine issue of material fact as to any element of its statute-of-limitations defenses and that it was entitled to a judgment as a matter of law. Wal-Mart Stores, Inc. v. Smitherman, 743 So.2d 442, 444 (Ala.1999).
The plaintiffs maintained that their claims accrued, and that the relevant statutes of limitations began to run, in May 2009 when the funeral home failed to identify the correct location of the burial sites of Prince, Jr., and Mobley, and that then-tort and contract claims, filed 13 months later in June 2010, were not barred by the statutes of limitations. Thus, the funeral home was entitled to a summary judgment only if the accrual date posited by the plaintiffs was erroneous as a matter of law and the accrual date occurred outside the applicable statutory limitations period.
“The very basic and long settled rule of construction of our courts is that a statute of limitations begins to run in favor of the party liable from the time the cause of action ‘accrues.’ The cause of action ‘accrues’ as soon as the party in whose favor it arises is entitled to maintain an action thereon.”
Garrett v. Raytheon Co., 368 So.2d 516, 518-19 (Ala.1979).
A. The Negligence and Wantonness Claims
In Payne v. Alabama Cemetery Ass’n, 413 So.2d 1067 (Ala.1982), the plaintiff sued a funeral home and a cemetery, alleging negligent and wanton destruction of her mother’s remains, which had disappeared from the grave where her mother had been buried. The evidence indicated that the remains had been missing from the mother’s grave since 1975 but that the plaintiff did not discover they were missing until May 1979. The plaintiff filed her complaint in January 1980. The trial court entered a summary judgment in favor of the defendants. On appeal, the defendants argued that the summary judgment could be affirmed on the basis that the plaintiffs claims were barred by the then-existing one-year, residual statute of limitations applicable to tort claims found in § 6-2-39, Ala.Code 1975. The supreme court disagreed, holding that the statute of limitations did not begin to run, as a matter of law, until the plaintiff discovered that her mother’s remains were missing because it was at that point that the plaintiff suffered an injury and was entitled to maintain an action. Payne, 413 So.2d at 1072. Payne, therefore, mandates reversal, in part, of the trial court’s judgment.
*767 B. The Tort-of-Outrage Claim
“[A] cause of action alleging the intentional infliction of emotional distress does not accrue until the defendant’s actions have caused the plaintiff severe distress, two of the four necessary elements for such a cause of action.”
Chaney v. Ala West-AL, LLC, 22 So.3d at 498. Because the plaintiffs’ distress did not exist until May 2009, the trial court’s judgment as to the tort-of-outrage claim is also erroneous.
C. The Fraud Claims
“[A] fraud claim accrues at the time of discovery by the aggrieved party of the fact constituting the fraud.” Gray v. Liberty Nat’l Life Ins. Co., 623 So.2d 1156, 1159 (Ala.1993). As we have noted, the plaintiffs allegedly discovered the facts amounting to fraudulent conduct on the part of the defendants in May 2009, and they brought suit well within the two-year statutory period for doing so. Ala. Code 1975, § 6-2-3.
D. The Contract Claim
“The statute of limitations on a contract action runs from the time a breach occurs rather than from the time actual damage is sustained.” AC, Inc. v. Baker, 622 So.2d 331, 335 (Ala.1993).
“ ‘Breach’ consists of the failure without legal excuse to perform any promise forming the whole or part of the contract. 17 Am.Jur.2d Contracts § 441 at 897. Where the defendant has agreed under the contract to do a particular thing, there is a breach and the right of action is complete upon his failure to do the particular thing he agreed to do. 17 Am.Jur.2d, supra.”
Seybold v. Magnolia Land Co., 376 So.2d 1083, 1085 (Ala.1979). The plaintiffs’ theory of the ease was that the breach occurred upon the defendants’ failure to keep accurate records of the location of their family members’ grave sites.
Neither Prince, Jr. (buried in January 2000) nor Mobley (buried in January 2004) was interred within six years of the filing of this action on June 25, 2010. Unlike the tort claims we have discussed, we cannot tell when the plaintiffs’ contract claims concerning the burial sites of Prince, Jr., and Mobley accrued because the time of the breach is not apparent. Although it is possible that the defendants’ record-keeping system was inadequate from the outset, and that the breach occurred as early as the burials of Prince, Jr., in January 2000 and Mobley in January 2004 — thus resulting in the contract claims being barred by the six-year statute of limitations applicable to breach-of-contract claims, see § 6-2-34(9), Ala.Code 1975 — it is also possible that the records may have been lost or may have become disorganized at some later date that was within the six-year statutory limitations period. Because there remains a genuine issue of material fact as to the accrual date of the contract claims concerning the burial sites of Prince, Jr., and Mobley, the funeral home did not establish that those claims were barred, as a matter of law, by the statute of limitations.
Citing Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir.1995), the funeral home argues for the first time on appeal that the judgment in its favor on the claims relating to the burial sites of Prince, Jr., and Mobley can be affirmed on the basis that the plaintiffs alleged no more than a mere “suspicion” that they had a cause of action against the funeral home as to those claims. Campbell is not particularly helpful because, for the point cited by the funeral home, the United States Court of Appeals for the Fifth Circuit was merely quoting a federal-practice treatise for the appropriate standard of review on a *768 Rule 12(b)(6), Fed.R.Civ.P., dismissal of a complaint; the court was not commenting upon any particular deficiency in the plaintiffs complaint. The court stated:
“ ‘[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.’ 5 Wright & Miller, Federal Practice and Procedure: Civil 2d § 1216 at 156-159 (footnote omitted). ‘[A] statement of facts that merely creates a suspicion that the pleader might have a right of action’ is insufficient. Id. at 163 (footnote omitted). ‘Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief ...’ 2A Moore’s Federal Practice ¶ 12.07 [2.-5] at 12-91 (footnote omitted). The court is not required to ‘conjure up unpled allegations or construe elaborately arcane scripts to’ save a complaint. Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir.1988).”
Campbell, 43 F.3d at 975.
Notwithstanding the plaintiffs’ statement that they “suspect[ed ] that there [was] a great likelihood” that the location of their family members’ graves was unknown, the plaintiffs’ statement of facts constituted more than a “mere suspicion” of a claim against the funeral home because it was based on the following other factual allegations: that the funeral home had represented to the plaintiffs that it kept accurate records of the location of all grave sites; that the funeral home had informed Martin of the location of three of her family members’ grave sites; and that the plaintiffs had subsequently been informed of a pending lawsuit, in which it had been alleged that the same defendants had misplaced another decedent’s remains. When those allegations are viewed in the light most favorable to the plaintiffs, an inference of fraud arises.

Conclusion

The summary judgment is affirmed insofar as it relates to the plaintiffs’ claims against the funeral home concerning the burial sites of Ms. Prince and Prince, Sr. The judgment is reversed insofar as it relates to the plaintiffs’ claims against the funeral home concerning the burial sites of Prince, Jr., and Mobley. As to the claims asserted against the cemetery (which has not favored this court with a brief), the summary judgment is reversed. The cause is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. In their complaint, the plaintiffs identified this party as "Hodges Funeral Chapel, LLC.” As discussed infra, this party indicated that its correct name is "Hodge’s Chapel, LLC.” We have amended the style of this case to reflect the correct name of this party.

" 2In some instances, this point in time may be the same as the date of the ‘accrual’ of a claim. However, as stated above, repose does not depend on ‘accrual,’ because the concept of accrual sometimes incorporates other factors, such as notice, knowledge, or discovery. For example, see Ala.Code 1975, § 6-2-3 (providing that a fraud claim does not accrue ‘until the discovery by the aggrieved party of the fact constituting the fraud’).”

. Notwithstanding this court’s use of the accrual date to analyze whether the claims in Willis were barred by the rule of repose, the result in Willis remains correct because, for the tort claims at issue in Willis, the date on which the 20-year period of the rule of repose began to run as to those claims was the same as the date of the accrual of the claims. See Liberty Nat’l, 825 So.2d at 764-65 & n. 2. See also Spain v. Brown & Williamson Tobacco Corp., 872 So.2d 101, 129 (Ala.2003) (John-stone, J., concurring in part, concurring specially in part, and dissenting in part) (noting that “die rule of repose is superfluous to the two-year statute of limitations for actions based on negligence [and] wantonness”). Accord Evans v. Walter Indus., Inc., 579 F.Supp.2d at 1361 n. 7 (noting that when "the relevant statutes of limitations ... happen to define 'accrual' as the date of the injury, [that date] is for all practical purposes the same date the rule of repose starts to run”).