672 F.2d 854
 3 Employee Benefits Ca 1667
 Martha HOLMES, Administratrix of the Estate of Charles Wade
Holmes, Plaintiff-Appellee,
v.
OXFORD CHEMICALS, INC., A DIVISION OF CONSOLIDATED FOODS
CORPORATION; Consolidated Foods Corporation,
Defendants-Appellants.
 No. 81-7382.
 United States Court of Appeals, Eleventh Circuit.
 April 5, 1982.
 
 Jones, Murray, Stewart & Yarbrough, P. C., Coleman Yarbrough, for defendants-appellants.
 Jere L. Beasley, Montgomery, Ala., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before TUTTLE, TJOFLAT and CLARK, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 This appeal challenges the correctness of the trial court's denial of a motion for a judgment n. o. v. after the jury returned its verdict for $25,000 damages in favor of appellant's decedent in his action for Consolidated Foods Corporation's alleged "tort of outrage." The only question raised on appeal is whether there was sufficient evidence under the recognized standard of Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969) to warrant the trial court's submission of the case to the jury.
 
 
 2
 The Supreme Court of Alabama has recently recognized the existence of such a tort of outrage:
 
 
 3
 We therefore join with our sister states of Maryland, Massachusetts, Missouri, Tennessee, West Virginia, Georgia, Washington, Florida, California and New York in appreciating that willful wrongs, or those made so recklessly as to equate willfulness, authorize recovery in damages for the mental suffering caused thereby, and we now recognize that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. Comment, Restatement, supra, at 78. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. Comment (d), Restatement, supra at 72. See also Prosser, Law of Torts (4th ed.) at 56-60 and Wade, supra, for instances which clearly fall within the principle.
 
 
 4
 American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala.1980).
 
 
 5
 While the Alabama Supreme Court reversed a judgment favoring a plaintiff in American Road Service Co. v. Inmon, 15 ABR 224, 233 (Ala.S.Ct.1980), and has not thus far affirmed a judgment favoring a plaintiff in such a case, we consider the law of the State of Alabama is adequately set out in this case.
 
 
 6
 Evidence presented to the jury showed that Charles W. Holmes, the decedent, was employed by Consolidated on October 2, 1978. As he was authorized to do, he participated and paid the appropriate monthly fee for the benefits provided in Consolidated's employee-funded disability plan. The plan provides that in the event of total disability, the employer will commence paying 90 days later an amount equal to sixty percent of his or her monthly compensation less
 
 
 7
 (a) Amounts initially paid as a monthly primary benefit under the Federal Social Security Act....
 
 
 8
 On April 10, 1979, the plaintiff suffered a heart attack that left him totally disabled. He applied for the plan payments and was determined by Consolidated to be disabled on July 28, 1979. At some time during this period, Holmes applied for Social Security disability benefits. On October 6, 1979, the Social Security Administration notified the plaintiff that he had been denied disability benefits. Consolidated then on October 19, 1979, 90 days after he had been determined disabled, began monthly payments to him of $500 per month.
 
 
 9
 The trial court, in its order denying the motion for j. n. o. v. made a summary of the factual situation which our study of the record satisfies us is fully supported:
 
 
 10
 The evidence showed that plaintiff had a severe heart attack on or about April 18, 1979. Defendant Consolidated was aware of the heart attack and that plaintiff's heart condition was so crippling that he was permanently disabled from performing any work. Between the time of the first severe heart attack and July 1979, Consolidated was aware that plaintiff had undergone further hospitalization and surgery for his condition.
 
 
 11
 Although plaintiff calculated that he was entitled to disability benefits of $780 per month, representing 60 per cent of his income as calculated by plaintiff for the months he worked for Consolidated, Consolidated calculated that plaintiff was entitled to $500 per month. On or about November 15, 1979, plaintiff received his first monthly check from defendant in the amount of $500. Plaintiff protested that this amount was incorrect. Although the Court has found that plaintiff was entitled to $730.40 per month as disability benefits, Consolidated had a good faith, reasonable belief that the sum owed was $500 per month, and no prejudice should attach to Consolidated insofar as the "tort of outrage" is concerned for its calculation of plaintiff's benefits at $500 monthly rather than a larger sum.
 
 
 12
 On or about March 11, 1980, without any prior notice to plaintiff, Consolidated reduced plaintiff's monthly check from $500 to $49.10, advising plaintiff to seek the balance of the $500 from the Social Security Administration. Consolidated had no basis for believing that plaintiff was receiving Social Security benefits. The administrator of Consolidated's disability program testified that approximately one-half of the requests for Social Security disability payments, even from employees of his company that had been adjudged fully disabled by the company, were turned down-at least initially-by the Social Security Administration.
 
 
 13
 Under its disability plan, Consolidated was entitled to reduce plaintiff's disability check by the amount of benefits plaintiff received from the Social Security Administration. Defendant's disability plan, however, did not require plaintiff to seek Social Security benefits, and it clearly did not authorize defendant to reduce plaintiff's monthly check in anticipation that plaintiff might at some later date receive Social Security benefits. At the time of trial, plaintiff was still not receiving Social Security benefits, and on April 11, 1980, when Consolidated was advised that plaintiff had been denied Social Security benefits, it resumed plaintiff's payments at $500 per month, together with a lump sum reimbursement of the amount previously withheld.
 
 
 14
 Defendant's administrator testified that he routinely cut the required payments to disabled persons such as plaintiff to force them to be diligent in seeking Social Security payments without making any inquiry as to whether they were receiving such benefits. He testified that he did this in order to put "the onus" on the disabled employee to take all steps necessary to get his Social Security benefits. Consolidated reasonably knew that plaintiff was distraught over his medical condition and permanent disability prior to its action of cutting plaintiff's disability check to $49 per month. The administrator acknowledged that he had no basis for believing that plaintiff had other income or assets, and he agreed that plaintiff could hardly survive on $49 per month. Plaintiff argued persuasively that for defendant to do this to a man whom it knew had a severe heart condition and was clearly distraught over his physical and financial condition was outrageous. Predictably, plaintiff suffered severe depression and required psychiatric treatment for his helpless financial condition imposed by defendant's deliberate and wrongful act of denying him the monthly income to which he was admittedly entitled.
 
 
 15
 Under Alabama law, the jury was charged to assess such damages as would deter this defendant and others from doing this or similar acts in the future, if the jury believed that defendant had committed the tort of outrage. Defendant's administrator conceded that he had been following this practice for years of cutting off benefits to disabled people without any regard to whether they were in fact receiving Social Security benefits. As already noted, defendant's agreement with its employees entitled it to make such reductions only if persons were actually receiving Social Security benefits.
 
 
 16
 There was ample evidence by psychiatric and other medical witnesses as well as lay persons that after the arbitrary reduction of his monthly payment from $500 to $49 Holmes suffered severe depression, emotional stress and physical weakness. He testified that this occurrence "devastated" him.
 
 
 17
 As found by the trial court, this is not such a case as was American Road Service Company, supra, where the Alabama Supreme Court found that the facts did not add up to outrageous conduct. The Alabama Court relied on section 46, Comment G, Restatement of Torts (1948) that: "The actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause him emotional distress...." Cited at 394 So.2d at 368. Here, of course, as we have noted, Consolidated was not insisting upon its legal rights in a permissible way. It was insisting on a policy that was strictly in violation of its contract with the employee. As stated by the trial court: "Under the plain language of Consolidated's disability agreement with its employees, Consolidated had no right to slash plaintiff's disability income in the hope that such drastic action might force plaintiff to seek Social Security benefits."
 
 
 18
 We conclude that the district court 510 F.Supp. 915 properly construed this newly recognized right of action for a tort of outrage by the Alabama Supreme Court. Both that Court and the Court of Appeals for the Third Circuit have defined a tort as embodying a concept of "extreme conduct," by incorporating the exact language of Comment (d), Restatement, supra. We think, therefore, that our affirmance of the trial court's judgment in this case is consistent with Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (1979), 3d Cir. en banc.
 
 
 19
 The judgment is AFFIRMED.