Ocie Jackson sued Alabama Power Company, alleging the tort of outrage. Alabama Power moved for a directed verdict at the close of the plaintiff's case and properly renewed the motion at the close of all evidence. The jury was unable to reach a verdict and, pursuant to Rule 50(b), A.R.Civ.P., Alabama Power moved for a judgment to be entered in its favor in accordance with its motion for directed verdict. The trial court granted the motion; Jackson appeals from the judgment.
In reviewing a judgment entered for the defendant pursuant to Rule 50(b), this Court must first determine whether there was sufficient evidence to establish each element of the plaintiff's claim. Casey v. Jones, 410 So.2d 5 (Ala. 1981). The elements of the tort of outrage are (1) that the defendant either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from its conduct; (2) that the defendant's conduct was extreme and outrageous; and (3) that the defendant's conduct caused emotional distress so severe that no reasonable person could be expected to endure it. American Road Service Co. v. Inmon,394 So.2d 361 (Ala. 1981).
The evidence indicated the following facts: In July 1989, Jackson lived with her daughter in a trailer park in Sumter County. She suffered from asthma and was on medication to control her condition. Jackson ingested this medication through hand-held inhalers or by use of an electric machine known as a nebulizer. Her doctor recommended that she use the nebulizer four times per day.
Although electric service was established through Alabama Power in her daughter's name, Jackson was responsible for paying the utility bill each month. Before 1989, her power had been disconnected at least six times for nonpayment. During the periods when her electricity was disconnected, Jackson did not use the nebulizer, but suffered no ill effects.
In July 1989, Jackson had an overdue bill of $144.49 for electric service. Anticipating another disconnection of service, Jackson visited two doctors, asking them to write a letter to Alabama Power to explain her condition and to urge the company not to disconnect her electricity. One of the doctors wrote a letter dated July 17, 1989, and the other wrote a letter dated July 19, 1989.
On July 19, an Alabama Power workman came to Jackson's trailer and disconnected her electricity, even after she told him she was sick and needed her nebulizer. Jackson then left the trailer and went to her local Alabama Power office. There she signed a contract agreeing to pay $100 of the bill that day and the balance by July 21, 1989. After being disconnected for about 10 hours, her electricity was restored that night.
Jackson did not pay the remaining balance as promised; thus, Alabama Power again disconnected her service on July 21, 1989. She was without power for about seven hours, until she paid the balance at the end of that day. Four days later, Jackson was hospitalized for treatment of an asthma attack, which she attributed to the fact the she had been unable to use her nebulizer on July 19 and July 21.
At trial, Stephen John Hood, Alabama Power's manager of customer services, testified that the company is subject to Alabama Public Service Commission (APSC) rules, and that APSC Rule 12 authorizes disconnection of service for nonpayment of a utility bill. He conceded, however, that Rule 12(b)(4) prohibits any disconnection of service after 3:30 p.m. of any day immediately preceding a day or days when the utility's office will be closed. Rule 12(e) requires Alabama Power to adopt and follow reasonable tariff rules governing the termination of service when a customer's life or health may be threatened by termination.
Alabama Power admits that it violated Rule 12(b)(4) by disconnecting Jackson's service after 3:30 p.m. on July 19, because the local Alabama Power office was closed the next day for the weekend. The company also admits that, while it does have special programs to help needy or handicapped customers *Page 441 
pay their power bills, Alabama Power personnel did not directly inform Jackson about these programs when she went to the local office on July 19 and July 21 to work out some means of payment to prevent disconnection of her service.
While we do not condone Alabama Power's violation of APSC Rule 12 or particularly admire its impassive view of Jackson's condition, we do not find that its actions sunk to the level of being "atrocious and utterly intolerable in a civilized society," American Road Service Co. v. Inmon, 394 So.2d at 365, nor can we hold that the two brief periods Jackson was without electricity caused her more distress than a reasonable person could be expected to endure. We note that Jackson's doctor testified at trial that a patient with Jackson's condition can ingest the necessary medication in tablet form, as well as by hand-held inhaler or by nebulizer, and that there is no real distinction between the different forms of this medication. He also testified that had he known that Jackson was unable to use the nebulizer he would have provided her with an alternative form of the medication or would have allowed her to use the nebulizer in his office. He stated that when Jackson visited his office on July 17 to ask him to write to Alabama Power on her behalf, she did not request a different form of medication, even though she knew that her electricity was about to be disconnected.
Based on the foregoing, we must hold that Jackson failed to establish the elements of her claim of outrage; therefore, we affirm the trial court's judgment.
AFFIRMED.
MADDOX, SHORES, INGRAM and COOK, JJ., concur.