Corine ZEIGLER, individually and as the parent and next friend of Kacheal Zeigler, a minor, Plaintiff,

v.

ELMORE COUNTY HEALTH CARE AUTHORITY, d/b/a Elmore Community Hospital; and Jackson Hospital and Clinic, Defendants.

No. Civ.A. 98–T–1309–N.

United States District Court,
M.D. Alabama,
Northern Division.

July 12, 1999.

Thomas R. Edwards, Edwards & Edwards, Wetumpka, AL, Steven F. Schmitt, Schmitt, Harper & Smith, Tallassee, AL, for plaintiff.

Lewis Peyton Chapman, III, William Sidney Haynes, Rachel Sanders–Cochran, Rushton, Stakely, Johnston & Garrett, Montgomery, AL, James Flynn Mozingo, James Eugene Williams, Melton, Espy, Williams & Hayes, P.C., Montgomery, AL, for defendants.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Corine Zeigler claims in this lawsuit that her infant daughter, Kacheal

Zeigler, was denied a medical screening examination in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), as added by § 9121(b) of the Comprehensive Omnibus Budget Reconciliation Act of 1985, 100 Stat. 164, and as amended, 42 U.S.C.A. § 1395dd, and she sues in both her individual and representative capacities. Zeigler further alleges that she and her daughter suffered the state-law tort of outrage as a result of that denial. The defendants here are Elmore County Health Care Authority, doing business as Elmore Community Hospital, and Jackson Hospital and Clinic. This court's jurisdiction has been properly invoked pursuant to 28 U.S.C.A. § 1331 (federal question), *see Thornton v. Southwest Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir.1990), and 28 U.S.C.A. § 1367 (supplemental).

The case is currently before the court on Elmore Community Hospital's motion for summary judgment, and, for the reasons set forth below, the motion will be granted in part and denied in part.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Once the party seeking summary judgment has informed the court of the basis for its motion, the non-moving party must affirmatively set forth specific facts showing a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56).

The court's role at the summary judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genu-

ine issue exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. BACKGROUND

Plaintiff Corine Zeigler has testified in her deposition that on March 6, 1998, she took her daughter to the emergency room at Elmore Community Hospital in Wetumpka, Alabama. Kacheal, who was then 20 months old, was crying, coughing, running a high fever and having difficulty breathing. Upon their arrival, Zeigler asked for treatment and was refused because of past-due medical bills. Zeigler was told that she would have to make a payment on those bills before her daughter could receive any medical attention. Zeigler then took her daughter to Baptist Medical Center in Montgomery, Alabama, where Kacheal was promptly screened, admitted and treated for a stomach virus and dehydration. Kacheal was released the next day and is, by all accounts, a healthy child today.

The defendants, by contrast, contend that the incident at Elmore Community Hospital never happened. They say that Kacheal was never presented for treatment on March 6, 1998. They never denied her any such treatment. And they never made any treatment contingent on the payment of past-due bills.

## III. DISCUSSION

### A. EMTALA Claims

EMTALA imposes, among other things, a medical screening requirement on hospitals with emergency departments. "[I]f any individual ... comes to the emergency department and a request is made on the individual's behalf for examination or

treatment for a medical condition, the hospital must provide for an appropriate medical screening examination ... to determine whether or not an emergency medical condition ... exists." 42 U.S.C.A. § 1395dd(a). According to the Zeigler's sworn testimony, Elmore Community Hospital clearly failed to provide a medical screening examination when Zeigler's brought her daughter to its emergency department. Because the plaintiff's version of events differs so markedly from that of the defendants, a genuine issue of fact exists on the central question of the hospital's liability for the denial of a medical screening examination. Elmore Community Hospital nonetheless asserts two grounds for summary judgment.

### 1.

■ First, Elmore Community Hospital argues that it is entitled to judgment as a matter of law because Corine Zeigler's cannot sue in her individual capacity under EMTALA for any denial of care to her daughter. In light of the legislative history of EMTALA's civil enforcement provision, the court agrees.

EMTALA provides a private right of action as follows:

> "*Any individual* who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate."

42 U.S.C.A. § 1395dd(d)(2)(A) (emphasis added). Although the Act defines neither 'any individual' nor the related terms 'personal harm' or 'direct result,' its legislative history clarifies who can sue under this provision.

Section 1395dd(d)(2)(A) originated in the 99th Congress as part of § 124 of H.R. 3128. The original bill, as reported out of the House Ways and Means Committee, would have allowed "*[a]ny person or enti-ty* that is adversely affected directly by a participating hospital's violation" to sue in state or federal court. H.R.Rep. No. 99–241, pt. 1, at 132 (emphasis added). The House Judiciary Committee changed this language significantly, however, when the Ways and Means Committee later referred § 124 to it for review.

As reported out of the Judiciary Committee on September 11, 1985, H.R.3128 would have permitted suit by "*[a]ny individual* who suffers personal harm and *any medical facility* which suffers a financial loss as a direct result of a participating hospital's violation...." H.R.Rep. No. 99–241, pt. 3, at 3 (emphasis added). Although the Committee did not define 'any individual,' 'personal harm' or 'direct result,' its report explains that the amendment would authorize "only two types of actions for damages." *Id.* at 6, *reprinted in* 1986 U.S.C.C.A.N. 42, 728. "The first of these," according to the report, "could be brought by the *individual patient* who suffers harm as a direct result of [the] hospital's failure to appropriately screen, stabilize, or properly transfer that patient." *Id.* (emphasis added). The second could be brought by a *medical facility* which received an improperly transferred patient. *See id.*

The full House passed H.R.3128, as amended by the Judiciary Committee, on October 31, 1985. *See* 131 Cong.Rec. H9478–541 (daily ed. Oct. 31, 1985) (House consideration and passage of H.R. 3128). The bill was then sent on to a House and Senate Conference Committee which adopted the House version of the civil enforcement provision with only a slight restructuring "to clarify its application." H.R.Rep. No. 453, at 476. As reported out of the Committee, the bill provided for suit by "[a]ny individual who suffers personal harm as a direct result of a participating hospital's violation...." *Id.* at 96. This language, virtually identical to the language reported out of the House Judiciary Committee but without reference

to 'medical facility,' was in the final bill and survives today.*

The legislative history thus suggests quite strongly that Congress intended to allow suit only by what the House Judiciary Committee called the 'individual patient,' that is, the individual for whose medical condition the emergency medical examination or treatment was sought. This reading is not only consistent with the plain language of § 1395dd(d)(2)(A), it is the most logical reading in light of § 1395dd(a): "if *any individual* ... comes to the emergency department and a request is made *on the individual's behalf* for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination...." The 'any individual' in § 1395dd(a) clearly refers to the individual with the medical condition, and it makes sense that Congress would carry this meaning forward to § 1395dd(d)(2)(A). Indeed, this use of 'individual' to refer to the 'individual patient,' or an individual with a medical condition, appears to be consistent throughout the Act. *See generally* 42 U.S.C.A. §§ 1395dd(a)–(i). The court must therefore conclude that Zeigler's cannot maintain an action under EMTALA for a violation related to her daughter's medical condition, and Elmore Community Hospital is entitled to summary judgment on this claim.

### 2.

■ Second, Elmore Community Hospital argues that it is entitled to judgment as a matter of law because Kacheal suffered no harm as a result of the March 6 incident. Although it might be difficult for Zeigler's to prove at trial that her 20–month–old daughter suffered emotional harm as a result of the March 6 incident, the record contains testimony from the doctor who treated her at Baptist Medical Center that the delay in treatment caused by Elmore Community Hospital's EMTALA violation prolonged Kacheal's suffering and delayed her recovery. The court can infer from this testimony that Kacheal suffered physical harm as a result of the delay, and, because EMTALA contains no *de minimus* exception, this harm is enough to sustain an action under § 1395dd(d)(2)(A). Elmore Community Hospital's argument on this point has no merit.

### B. Outrage Claims

■ Under Alabama law, " '[t]he elements of the tort of outrage are: (1) that the defendant either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from its conduct; (2) that the defendant's conduct was extreme and outrageous; and (3) that the defendant's conduct caused emotional distress so severe that no reasonable person could be expected to endure it.' " *Sphere Drake Insurance, P.L.C. v. Shoney's, Inc.*, 923 F.Supp. 1481, 1491 (M.D.Ala.1996) (Thompson, C.J.) (quoting *Jackson v. Alabama Power Co.*, 630 So.2d 439, 440 (Ala.1993)). The record now before the court contains no evidence that either Zeigler's or her daughter suffered *severe* emotional distress, so Zeigler's has failed in her burden of establishing the third element of an outrage claim.

■ Zeigler's has indicated that she was embarrassed, humiliated, and angered by the March 6 incident, and the court might also infer that Zeigler's was distressed at seeing her child suffer needlessly while she drove from Elmore Community Hospital to Baptist Medical Center. There is no evidence, however, that the distress caused

---

* Another provision in EMTALA allows for suits by medical facilities:

"Any medical facility that suffers a financial loss as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for financial loss, under the law of the State in which the hospital is located, and such equitable relief as is appropriate."

42 U.S.C.A. § 1395dd(d)(2)(B).

**1328**

by these indignities was so severe that no reasonable person could be expected to endure it. There is no evidence that Zeigler's has ever sought counseling or taken medication for this distress, and Zeigler's has testified that she has not had any trouble sleeping since the incident. Having thus presented no evidence of severe emotional distress, Zeigler's has failed to establish that a genuine issue of material fact exists on her individual-capacity outrage claim.

■ There is likewise no evidence that Kacheal has suffered any severe emotional distress. The record establishes that 20–month-old Kacheal was in discomfort upon her arrival at Baptist Medical Center and may have been suffering from some anxiety, but there is nothing to suggest that this distress was so severe that no reasonable person could be expected to endure it. Nor is there any evidence to suggest that this physical distress had an emotional impact. Kacheal is reported to be a healthy and normal child today with no lasting complications—physical or emotional—from the March 6 incident or her illness. Elmore Community Hospital is therefore entitled to summary judgment on Zeigler's representative-capacity outrage claim as well.

### IV. CONCLUSION

For the foregoing reasons, it is ORDERED that defendant Elmore County Health Care Authority's motion for summary judgment, filed May 27, 1999, is granted in all respects except as to plaintiff Corine Zeigler's EMTALA claim on behalf of her daughter.