[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 17-14783 and 18-14082
_____

D.C. Docket No. 2:12-cv-00598-AKK

DANA ANDERSON,

Plaintiff-Appellant-Cross Appellee,

BELINDA BEVERLY,
KARI WALKER,
KATHY LACKEY,

Plaintiff-Appellants

versus

SURGERY CENTER OF CULLMAN, INC.,
SURGICAL CARE AFFILIATES, LLC, et al.,

Defendant-Appellees,

KEVIN JOHNSON,

Defendant-Appellee-Cross Appellant.
_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 22, 2020)

Before JORDAN, TJOFLAT, and ANDERSON, Circuit Judges.

PER CURIAM:

These two consolidated appeals present a number of issues related to sexual harassment. We assume the reader's familiarity with the underlying facts and write solely for the parties. We discuss the facts below as necessary to explain our rulings.

## I.  INTRODUCTION

Plaintiffs Dana Anderson, Belinda Beverly, Kari Walker, and Kathy Lackey brought Title VII claims against their employer, Surgical Care Affiliates, LLC ("SCA"), and numerous state-law claims, including negligent/wanton hiring/training/supervision/retention, invasion of privacy, assault and battery, and intentional infliction of emotional distress (or "outrage"), against SCA, its corporate affiliates, and Dr. Kevin Johnson.

We briefly set out the facts relevant to this appeal, construing the evidence and all reasonable inferences arising from it in the light most favorable to plaintiffs. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). SCA, plaintiffs' former employer, operates Surgery Center of Cullman, an outpatient surgery center in Alabama, through its wholly owned subsidiary Surgery Center of Cullman, Inc. ("SCC"). Johnson is an anesthesiologist who contracted with SCC to provide anesthesia services to the Center. Through another services agreement,

2

Johnson served as the Center's Medical Director. This role meant that Johnson was usually at the top of the Center's chain-of-command on any given day.

SCA contracted with SCC to provide SCA employees to staff the Center, and SCA manages the Center's daily operations under the contract. The plaintiffs were four of these employees. Anderson was a registered nurse who worked at the Center from 2006 to March 7, 2012. Lackey was a registered nurse from June 2010 to March 2011. Both nurses worked with Johnson daily.

Anderson testified that, since her employment began, Johnson intimidated and harassed her. He choked her, kicked her, pulled her hair, and kissed her. He wrote a "sex word of the week" on her calendar, threatened her, and passed around a picture of Anderson on her hands and knees while making inappropriate comments. Anderson anonymously complained of this behavior in February 2010. After the complaint, Johnson ceased some but not all of this behavior. He referred to Anderson and Lackey as lesbians and told them to "get a room," forcefully hugged Anderson, made lewd remarks about Anderson to Lackey while inserting a catheter, talked about young female patients' "pubic scrapes," discussed employees' looks in public, and called another employee "the biggest slut in Joppa."

In October 2010, at a Halloween party, Lackey testified that Johnson pulled on the tail of her costume, a tiger mascot, and made a sexual reference. She

3

testified that Johnson called her "baby" and referred to women as "bitches."  He hugged her and tapped her shoulders.  She also testified that she saw Johnson require Anderson to "beg" for routine assistance, inappropriately touch or eat her food and drink, and call her names.

The plaintiffs complained of Johnson's harassing conduct on January 19, 2011.  Center Administrator Lori Bates reported the complaints to SCA Regional Vice President Tom Gill and SCC Board Member Dr. Greg Windham; all three met with plaintiffs on January 21, 2011.  SCC's Medical Executive Committee met on March 2, 2011; there, the Committee terminated the Medical Director services agreement with Johnson and requested that he self-report to the Alabama Physician Health Program and take an eight-week leave of absence.  Plaintiffs testified that Johnson did not engage in any more sexually harassing behavior after the 2011 investigation.

Lackey resigned in March 2011.  Johnson returned from his leave in May 2011 to resume providing anesthesia services to the Center.  Anderson testified that after she complained, she was given extra job duties as the Center's new safety officer.  She decided at the end of 2011 that she could no longer work with Johnson, feeling that he was a threat to her life and nursing license.  She resigned her employment in March 2012.

4

Lackey's claims for Title VII hostile work environment (against SCA), Title VII constructive discharge (against SCA), and the tort of outrage (against Johnson) were rejected by the district court on summary judgment.

Beverly and Walker accepted offers of judgment from the defendants. Some of Anderson's claims were dismissed on summary judgment, including, as relevant here, her Title VII constructive discharge claim against SCA. The rest of her claims proceeded to trial. The jury found for Anderson on her hostile work environment claim against SCA, awarding her $250,000 in compensatory damages and $250,000 in punitive damages. The jury found Johnson liable for both assault and battery and the tort of outrage, awarding $200,000 in compensatory damages and $50,000 in punitive damages for each tort. Because of Title VII's statutory cap on damages, see 42 U.S.C. § 1981a(b)(3)(D), the jury's $1,000,000 verdict was reduced to $800,000.

Post-trial, Johnson filed a motion for a new trial or remittitur of damages, which the district court denied. Johnson also filed a renewed motion for judgment as a matter of law as to Anderson's outrage claim. The district court granted this motion, concluding that Anderson had not demonstrated the requisite severe emotional distress, and vacated the jury's $250,000 award on the outrage claim.

5

The plaintiffs filed a petition for attorneys' fees and costs. The district court awarded fees of $1,320,081.81.  The basis for this fee award is discussed more thoroughly below.

## II.  DISCUSSION

The parties appeal various aspects of the district court's decisions below. Anderson appeals the denial of her constructive discharge claim at summary judgment and the grant of Johnson's post-trial motion for judgment as a matter of law on her outrage claim.  Anderson, Beverly, and Walker collectively appeal the district court's fee award.  Lackey appeals the district court's grant of summary judgment to SCA denying her hostile work environment, constructive discharge, and outrage claims.  And Johnson appeals the denial of his motion for remittitur or a new trial on Anderson's assault and battery claim.  We will address each issue in turn.

A.  Anderson's Constructive Discharge Claim

Anderson appeals the district court's grant of summary judgment against her on her constructive discharge claim.  Reviewing de novo, we will affirm.  Battle v. Bd. of Regents for Ga., 468 F.3d 755, 759 (11th Cir. 2006).

Constructive discharge claims are appropriate when "an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would

6

have felt compelled to resign." Green v. Brennan, __ U.S.__, 136 S. Ct. 1769, 1776 (2016) (citing Pa. State Police v. Suders, 542 U.S. 129, 141 (2004)); Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003). The intolerableness inquiry is objective and requires more than the minimum necessary to prove a Title VII hostile work environment claim. Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1282 (11th Cir. 2003).

Anderson has not identified any reversible error in the district court's grant of summary judgment on her constructive discharge claim. It is apparent from reviewing the record and Anderson's factual contentions that she did not, after complaining, suffer any further sexual harassment. She herself so testified. Moreover, while her brief and oral argument intimated that she was required by her new job as Safety Officer to spend time alone and after hours with Johnson, there is in fact no record evidence that the two were ever alone again. Indeed, Anderson's deposition testimony and affidavit indicate that SCA management accommodated her request not to work alone with Johnson. Anderson was asked in her deposition: "After the complaint in 2011, were you ever alone with Dr. Johnson." Answer: "No, ma'am." Anderson deposition, Doc. 140-31, at 150. In her affidavit, Anderson affirmatively stated: "After the 2011 investigation, I refused to close the facility at night alone with Johnson. Hammock, Gill, Crook

7

and Bates assured me that I would not be put in the position to be alone with Johnson." Anderson affidavit, Doc. 178-3, at 280.

Anderson identifies little other evidence of a work environment that exceeds the standard necessary to find a hostile work environment. The sole instance of offensive sexual conduct (after her 2011 complaint) to which she points is the inappropriate labels on desserts at the Center's 2011 Halloween party. While distasteful at the very least, this isolated incident is simply not enough to form the basis for a constructive discharge claim. Anderson also argues that she was given additional job duties upon complaining, and that Johnson stated that if the Center gave her more and more duties, she would quit. But she cites no case law supporting the proposition that the imposition of new duties, standing alone, can contribute to an "intolerable" work environment worse than a hostile work environment.

Moreover, Anderson raised this imposition of new duties as a major part of her retaliation claim in the district court. The district court rejected this claim at summary judgment, and Anderson did not appeal. Now on appeal, Anderson uses it in support of her constructive discharge claim. The new job duties could theoretically show retaliation by her employer—although the district court concluded that the facts did not bear this out—but the facts here do not rise to the

8

level of a sufficiently intolerable work environment to constitute constructive

discharge.

We therefore affirm.


B. Anderson's Outrage Claim Against Dr. Johnson

Anderson argues that the district court was wrong to grant Johnson's

renewed motion for judgment as a matter of law on her outrage claim.[1]  We review

the court's decision de novo.  Thosteson v. United States, 331 F.3d 1294, 1298

(11th Cir. 2003).

Alabama's tort of outrage has three elements: the defendant's conduct must

(1) be intentional/reckless, (2) be extreme and outrageous, and (3) cause emotional

distress so severe that no reasonable person could be expected to endure it.  Wilson

v. Univ. of Ala. Health Serv. Found., P.C., 266 So.3d 674, 676 (Ala. 2017).  The

district court concluded that a reasonable jury could not find that Anderson

suffered "emotional distress so severe that no reasonable person could be expected

to endure it."  The court noted that there was no outward signifier or manifestation

of the severity of her distress.  Anderson did not seek medical attention or take

---

[1]     A party is entitled to judgment as a matter of law only when there is no legally sufficient evidentiary basis for a reasonable jury to find for the other party on that issue.  Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148-51 (2000).

9

medication, didn't experience sleep deprivation or weight fluctuations, and in fact sought to work additional hours.

The district court held that Alabama courts "generally require more evidence of distress than the plaintiff's testimony that they were upset, uncomfortable, or afraid," and usually involve "some outward signifier or manifestation of the severity of distress to satisfy the injury component of an outrage claim." For example, Cates v. Taylor, 428 So.2d 637, 639-40 (Ala. 1983), found severe emotional distress when the plaintiff "suffered from sleeplessness and from weight loss" in addition to crying, nervousness, embarrassment, and humiliation. And Harrelson v. R.J., 882 So.2d 317, 322 (Ala. 2003), noted that the plaintiff had sought mental health treatment, suffered nightmares and suicidal thoughts, and occasionally became "hysterical."[2] Even the cases cited by Anderson, including Travelers Indemnity Co. of Illinois v. Griner, 809 So.2d 808 (Ala. 2001), involved some clear physical manifestation of emotional distress, such as "increased pain,

---

[2]    See also Holmes v. Oxford Chems., Inc., 672 F.2d 854, 856-57 (11th Cir. 1982) (noting the "ample evidence by psychiatric and other medical witnesses as well as lay persons that after the arbitrary reduction of his monthly payment from $500 to $49 Holmes suffered severe depression, emotional stress and physical weakness"); K.M. v. Ala. Dept. of Youth Servs., 360 F. Supp. 2d 1253, 1261 (M.D. Ala. 2005) (finding severe emotional distress when the plaintiff was so affected by sexual and physical assault that she cut herself, bit her wrists, and made "suicide gestures" to hospital staff); Zeigler v. Elmore Cnty. Health Care Auth., 56 F. Supp. 2d 1324, 1327-28 (M.D. Ala. 1999) (finding no evidence of severe emotional distress because one plaintiff "has [n]ever sought counseling or taken medication for this distress" or "had any trouble sleeping since the incident"); U.S.A. Oil, Inc. v. Smith, 415 So.2d 1098, 1100-01 (Ala. 1982) (holding that plaintiff who testified that she could not sleep, was upset, and frequently cried could not show severe emotional distress); Am. Rd. Serv. Co. v. Inmon, 394 So.2d 361 (Ala. 1980) (holding that weight loss and insomnia did not constitute sufficient distress).

10

sleep deprivation, and clinical depression for five years." Id. at 812. While Anderson was subjected to repugnant conduct, she is not able to demonstrate unendurable and severe emotional distress due to that conduct.

Although we do not read the district court ruling in this regard as a holding that some outward signifier of extreme emotional distress is an absolute necessity in every outrage case—nor do we—it is clear that the Alabama cases almost always involve some such sign in order to get to the jury. When asked at oral argument whether there were any Alabama cases that allowed an outrage claim to go to the jury without some such outward signifier, counsel for plaintiff could name only cases concerning the defiling of cemetery plots or dead bodies. However, those cases involve situations of emotional distress so severe that the Alabama courts appear to presume that no reasonable person could be expected to endure it. See Whitt v. Hulsey, 519 So.2d 901, 903 (Ala. 1987); Martin v. Hodges Chapel, LLC, 89 So.3d 756, 760 (Civ. App. Ala. 2011).

We cannot conclude that the district court erred in holding that there simply was not sufficient evidence in this record that a jury could find that the outrage standard has been met—i.e., that Anderson has suffered "emotional distress so severe that no reasonable person could be expected to endure it." We cannot conclude that there was no reasonable nurse who could be expected to endure association with the post-leave-of-absence Johnson in the employment. We

11

acknowledge that Anderson had been subjected to crude and offensive conduct, but most of that conduct attributable to Johnson was sexual harassment which had ceased as the result of plaintiffs' complaints, as Anderson herself testified. According to Anderson's counsel at oral argument, the culminating trigger causing Anderson's resignation was the failure of SCA to seriously consider her plea not to be required to close up with Johnson. However, counsel's assertion is not supported in the record. Anderson testified that, after Johnson's return from his forced leave of absence, Johnson engaged in no further sexual harassment, and she was not required to be alone again with Johnson. Moreover, Johnson is the only defendant in Anderson's outrage claim, and Johnson would not be fully responsible for such actions of SCA management in any event.

Given the limited nature of the Alabama court of outrage, Ex parte Crawford and Co., 693 So.2d 458, 459 (Ala. 1997), we cannot conclude that the district court erred in granting Johnson's post-trial judgment as a matter of law on Anderson's claim of outrage under Alabama law.

C.  Lackey's Hostile Work Environment Claim

Lackey appeals the district court's grant of summary judgment with respect to SCA's liability for the hostile work environment created by Johnson's sexual harassment. We will affirm.

12

Because SCA's Faragher/Ellerth defense[3] is clear, we assume arguendo –

but expressly do not decide – that plaintiff Lackey's hostile environment claim

satisfies the severe or pervasive standard.[4]  Accordingly, we turn our discussion to

the Faragher defense.

 We conclude that Lackey's hostile environment claim fails because Lackey

has failed to show that SCA is liable for the alleged conduct.  The parties dispute

the proper standard for holding SCA liable for Johnson's conduct.  Lackey argues

that Johnson was her supervisor, and therefore SCA must satisfy the

Faragher/Ellerth defense to avoid liability.  SCA, on the other hand, argues that

Johnson was neither Lackey's supervisor nor an SCA employee, and therefore

Lackey must show that SCA knew or should have known of the harassment but

failed to take prompt remedial action.  Beckford v. Dep't of Corr., 605 F.3d 951,

957-58, 960-61 (11th Cir. 2010) (negligence standard, rather than Faragher/Ellerth,

applies when harassment conducted by someone other than supervisor, including

coworkers and third parties).  We will assume arguendo that Johnson was Lackey's

---

[3]    See Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

[4]    We acknowledge some doubts about some of Lackey's belated assertions of sexual harassment, and it is obvious that Lackey's claim of sexual harassment is weaker than is Anderson's.  But because SCA's Faragher/Ellerth is so clear, we need not decide whether Lackey has satisfied the severe or pervasive threshold.

supervisor and that SCA must satisfy the Faragher/Ellerth defense to avoid liability.

We conclude that SCA has satisfied its burden under the Faragher/Ellerth defense. The defense has two elements: (1) that "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior;" and (2) that the victimized employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998). This standard protects responsible employers who have effective sexual harassment policies and grievance processes. The employer bears the burden of proof on both elements. Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1313 (11th Cir. 2001).

SCA satisfied the first element: demonstrating reasonable care in preventing and promptly correcting sexually harassing behavior. SCA has a detailed anti-harassment policy of which Lackey was aware. Upon receiving reports of Johnson's behavior, SCA administrators immediately asked for written statements and promptly limited Johnson's contact with the nurses. SCA participated in terminating Johnson's status as medical director at the facility; Johnson was required to take a remedial course and an eight-week leave of absence. Whether or not the nurses' complaints were discouraged, as Lackey contends, or immediately

14

taken seriously, as SCA argues, it is clear from the record that SCA and the other corporate defendants moved promptly, terminating the facility's medical director services agreement with Johnson and requesting that he take an eight-week leave and report to the Alabama Physician Health Program.

Most importantly, and dispositive of this issue, Lackey admits that there was no sexual harassment after she and the other nurses filed their complaints; this demonstrates that SCA's remedial actions were adequate.  This is sufficient to satisfy the first prong of the defense.  See Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1305 (11th Cir. 2007) ("We have held that even if the process in which an employer arrives at a remedy in the case of alleged sexual harassment is somehow defective, the defense is still available if the remedial result is adequate.  In other words, a reasonable result cures an unreasonable process." (citation omitted)); Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1288 (11th Cir. 2003) ("[W]here the substantive measures taken by the employer are sufficient to address the harassing behavior, complaints about the process under which those measures are adopted ring hollow.").

SCA also satisfied the second element: demonstrating that Lackey unreasonably failed to take advantage of preventive or corrective opportunities. Lackey reported Johnson's harassment in January 2011.  The parties disagree on when she first experienced harassment, but one significant incident involving

15

physical manipulation of Lackey's Halloween costume coupled with a suggestive comment occurred in October 2010. The record suggests that harassment may have occurred even earlier, perhaps as early as June 2010, when she witnessed Johnson's harassment of Anderson. Lackey waited at least three months (from October 2010 to January 2011) to report Johnson, a length of time that this court has previously concluded constitutes unreasonable delay. Under our precedent, this three-month wait is too long to satisfy the "prompt reporting duty under the prophylactic rules the Supreme Court built into Title VII in the Faragher and Ellerth decisions." 480 F.3d at 1306. Baldwin held that a 3.5 month delay from the first incident of harassment was not prompt; this court has held that a 2.5 month delay was also too long. Walton, 347 F.3d at 1289. And if the harassment began even earlier, she waited even longer than that.

Lackey's contention that she delayed complaining because she feared SCA would ignore her complaints and retaliate against her is unavailing because the fact that prior complaints failed to stop harassment does not mean that the employer was ineffective, or that future complaints would be futile. Moreover, because there was no evidence that SCA or Johnson had either discharged employees or engaged in other adverse employment actions, Lackey's fear of retaliation was unreasonable. Again under Baldwin, a plaintiff in an "extreme case may have reasons for not reporting harassment earlier that are good enough to excuse the

delay," 480 F.3d at 1307, but mine-run, generalized fears of retaliation are not enough to justify a typical reporting delay. This cannot be considered an extreme case, especially since Lackey's briefing does not cite any instances of prior complaints leading to concrete retaliation by SCA.

D. Claims of Plaintiffs Anderson, Beverly, and Walker with Respect to Attorneys' Fees Awarded by the District Court to these Three Prevailing Parties

Anderson, Beverly, and Walker appeal the district court's attorneys' fee award on two grounds: that it erroneously reduced its lodestar calculation by 10% for purported block billing by two plaintiffs' attorneys, and that it erroneously reduced the resulting fee award by 20% for limited success.

While summary judgment was pending, two plaintiffs, Beverly and Walker, accepted offers of judgment of $187, 500 and $450,000 respectively. The offers resolved all claims and included "reasonable attorney's fees and costs."

Anderson prevailed at trial on her Title VII hostile environment claim and two state law torts. The jury awarded her $500,000 for the Title VII claim and $250,000 apiece for the state torts. The district court reduced her Title VII award to the $300,00 maximum permitted under 42 U.S.C. § 1981a and granted Johnson's motion for judgment as a matter of law on the Anderson's outrage claim, leaving a total award of $550,000.

All three plaintiffs submitted a petition for attorneys' fees. The district court established a reasonable hourly rate for attorneys and paralegals and turned to the

17

number of compensable hours. He concluded that the time spent on the state law claims against Johnson should be included in the calculation because they shared a common core with the compensable Title VII claims. And he struck 270.85 hours of paralegal time as non-compensable administrative tasks.

The district court identified instances of "block billing" by two attorneys, and determined that the remaining hours were unreasonably high because of block billing. The district court reduced all claimed hours (by all attorneys and paralegals) by 10%, establishing a lodestar of $1,650,102.26.

The district court then reduced that sum by 20%. Applying Hensley v. Eckerhart, 461 U.S. 424 (1983), the court concluded that Anderson's "partial success" and success on "only some of [her] claims for relief" justified a downward departure in fees. This led to a final fee of $1,320,081.81.

Fee awards are reviewed for abuse of discretion; reversal requires a clear error of judgment, a failure to follow the proper legal standard or process, or a reliance on clearly erroneous findings of fact. Gray ex rel. Alexander v. Bostic, 613 F.3d 1035, 1039 (11th Cir. 2010). "This standard necessarily implies a range of choices, and we will affirm even if we would have decided the other way if it had been our choice." Yellow Pages Photos, Inc. v. Ziplocal, LP, 846 F.3d 1159, 1163 (11th Cir. 2017) (cleaned up).

18

First, we address the plaintiffs' challenge to the district court's 10% across-the-board reduction of the lodestar because of block billing.  Plaintiffs do not challenge a 10% reduction of the hours billed by Ms. Pearson, implicitly acknowledging that she engaged in the improper practice frequently.  However, plaintiffs do challenge the 10% reduction of Ms. Haynes's hours, arguing that the district court cited only two examples of such billing by her.  And plaintiffs also challenge the district court's application of the 10% reduction to the hours billed by the other attorneys and paralegals with respect to whom the district court identified no examples of block billing.  However, the district court's reference to the two examples of Ms. Haynes' improper billing were explicitly cited as mere examples.  We believe that the district court perceived the practice as a frequent problem with counsel for plaintiffs.  See Dist. Ct. Opinion, Doc. 402, at 37 (referring to the "general block billing practice.").  Incidentally, we note that the billing of Ms. Pearson and Ms. Haynes constituted the overwhelming majority of the hours and dollars billed.  We cannot conclude that the district court abused its broad discretion in this regard.

Next, we address plaintiffs' challenge to the district court's imposition of a 20% across-the-board reduction of the lodestar because of their limited success. The district court properly applied the Hensley standard applicable when claims involve a common core of operative facts.  In such situations, Hensley held:

19

[T]he district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Hensley, 461 U.S. at 435.  Considering that overall relief, the district court concluded that the verdict was still "limited in comparison to the scope of the litigation as a whole."  Dist. Ct. Op., Doc. 402, at 37 (quoting Norman v. Housing Auth. of the City of Montgomery, 836 F.3d 1292, 1302 (11th Cir. 1988)).  We cannot conclude that the district court abused its discretion.    There were significant claims on which plaintiffs did not prevail.  Plaintiff Anderson was unsuccessful on her retaliation and constructive discharge claims against SCA, as well as all of her state law claims against SCA.  She was also unsuccessful in her Alabama outrage claim against Johnson.  Plaintiffs Beverly and Walker settled all of their claims.  The district court was in a better position to assess which of their claims might have been successful and which unsuccessful.  See Hensley, 461 U.S. at 437 (noting that the abuse of discretion standard "is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.").  Of course, plaintiff Lackey was unsuccessful with respect to all of her claims.  Although plaintiffs' counsel argued that they had already removed time spent on behalf of plaintiff Lackey, as well as the unsuccessful state law claims against SCA, the district court expressly rejected that assertion, and expressly held that its

20

20% reduction in part accounted for the difficulty in disaggregating time spent on compensable and non-compensable claims.

In light of the district court's broad discretion, and in light of the significance of the claims on which plaintiffs were not successful, we cannot conclude that the district court abused its discretion.

E.  Lackey's Outrage Claim Against Dr. Johnson

Lackey appeals the district court's grant of summary judgment on her outrage claim against Johnson.  Again, to prove the tort of outrage a plaintiff must show that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.  Thomas v. BSE Indus. Contractors Inc., 624 So.2d 1041, 1043 (Ala. 1993).  Outrage is a "very limited cause of action that is available only in the most egregious circumstances."  Id. at 1044 (noting that the Alabama Supreme Court "has held in a large majority of the outrage cases reviewed that no jury question was presented").

The parties dispute whether the district court properly considered Lackey's affidavit, filed with her response to the defendants' motions for summary judgment.  We can pretermit this issue, as it does not impact our ultimate conclusion.  We readily conclude that Lackey cannot show that she suffered emotional distress so severe that no reasonable person could be expected to endure

21

it.  Alabama cases hold that "some distress," "generalized apprehensions and fears," "irritation," "aggravation" and "inconvenience, discontentment, and annoyance" are insufficient to satisfy the third element of the tort of outrage.  See Ex parte Crawford & Co., 693 So.2d 458, 459 (Ala. 1997); Turner v. Hayes, 719 So.2d 1184, 1187 (Ala. Civ. App. 1997).

Accordingly, we affirm the district court's grant of summary judgment against Lackey on her outrage claim against Dr. Johnson.

F.  Lackey's Constructive Discharge Claim

Lackey appeals the district court's grant of summary judgment on her Title VII constructive discharge claim.  We will affirm.

Constructive discharge occurs when "an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." Green v. Brennan, __U.S.__, 136 S. Ct. 1769, 1776 (2016).  It requires more than is necessary to prove a hostile work environment, see Walton, 347 F.3d at 1282, and is an objective inquiry, Pa. State Police v. Suders, 542 U.S. 129, 143 (2004).

Lackey argues that she was constructively discharged by SCA because she was required to continue working with the sexually harassing Johnson.  She notes one incident in which she was ordered by Johnson to administer pain medication through a shot instead of an IV, and felt that Johnson required her to use this more

22

painful method as retribution against her for her filing of a complaint. Once she learned that Johnson would be returning to SCA after his leave of absence, she concluded that she could not work with Johnson in the future and resigned.

We conclude that this factual background is insufficient to demonstrate constructive discharge. Lackey testified that she was not subject to any harassing conduct after complaining about Johnson. In addition, Lackey has not introduced evidence that SCA intended to or acted to force her resignation. And Lackey cites no case law supporting her contention that Johnson's purported maladministration of pain medication can form the basis, in whole or in part, for a constructive discharge claim. Moreover, the fact that Lackey resigned before Johnson returned indicates that she did not give the remedial action taken by SCA against Johnson a chance to work.

In sum, because Lackey testified that the sexual harassment ceased, and because there is insufficient evidence of other intolerable conditions, Lackey cannot demonstrate constructive discharge.

G.  Johnson's Argument for Remittitur or New Trial

Johnson argues that the district court was wrong to deny his motion for remittitur or a new trial on Anderson's assault and battery claim. The jury awarded Anderson $200,000 in compensatory damages and $50,000 in punitive damages. Johnson filed a motion under Rule 59 for remittitur of these excessive damages,

23

arguing that the damages award exceeds the amount established by the evidence. The district court concluded that the majority of the compensatory damages must have been for Anderson's mental anguish. Reviewing the verdict for the jury's abuse of discretion, the court held that Anderson's testimony regarding her mental suffering was sufficient to support the verdict, particularly given the fact that compensatory damages do not need to be proven with a high degree of specificity and may be inferred from the circumstances.  See Ferrill v. Parker Grp., Inc., 168 F.3d 468, 476 (11th Cir. 1999).  And humiliation and insult are recognized and recoverable harms that can be supported by a plaintiff's own testimony.  Id. Johnson now argues that Anderson introduced insufficient evidence of mental anguish and the $200,000 in compensatory damages are not supported by the record.[5]  We will affirm.

Determining compensatory damages for physical pain and mental suffering is "left to the sound discretion of the jury, subject only to correction by the court for clear abuse or passionate exercise of that discretion."  Ala. Power Co. v. Mosley, 318 So.2d 260, 266 (Ala. 1975).  Anderson offered sufficient evidence of mental anguish, both through her own testimony and the testimony of others.  We

---

[5]    Denials of motions for remittitur or new trial are reviewed for abuse of discretion.  Moore v. Appliance Direct, Inc., 708 F.3d 1233, 1237 (11th Cir. 2013).

cannot say that the district court's denial of Johnson's motion was an abuse of discretion.

## III.  CONCLUSION

For the foregoing reasons, we affirm in all respects.

**AFFIRMED.**